BURR, J., not voting.

(157 App. Div. 383.)

### WEISS v. CITY OF MT. VERNON et al.

(Supreme Court, Appellate Division, Second Department.   May 29, 1913.)

1. DEDICATION (§ 37*)—ACCEPTANCE—USER.
   Where grantees of an owner of land, who had offered to dedicate a street to the public, appropriated part of the land intended for a street, and held it adversely for more than the period of limitation, their title is good as against the municipality, even though it subsequently accepted the dedication by using the uninclosed portion of the land intended for a street; for, where a municipality relies upon the acceptance of a dedication by user, it must show the use or other acts indicating the acceptance, and the dimensions of the highway will correspond to the user or the acts.
   [Ed. Note.—For other cases, see Dedication, Cent. Dig. §§ 73, 74; Dec. Dig. § 37.*]

2. WILLS (§ 602*)—CONSTRUCTION—ESTATES DEVISED.
   Where a recital in a will of a present gift of all of testator's property to his wife, with authority to sell, convey, and mortgage, was followed by an express declaration that the widow should have and enjoy the proceeds of the property only so long as she remained a widow, and in case of remarriage she should only be entitled to her statutory share, the widow takes a fee determinable.
   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1351–1359; Dec. Dig. § 602.*]

3. TRESPASS (§ 19*)—TITLE TO SUPPORT.
   One whose interest is merely a fee determinable may maintain an action for damages for the invasion of her land, and for an injunction to prevent subsequent invasions.
   [Ed. Note.—For other cases, see Trespass, Cent. Dig. §§ 18–31; Dec. Dig. § 19.*]

Appeal from Special Term, Westchester County.

Action by Caroline Weiss against the City of Mt. Vernon and others.  From a judgment for plaintiff, defendants appeal.  Affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, STAPLETON, and PUTNAM, JJ.

Frank A. Bennett, Corp. Counsel, of Mt. Vernon, for appellants.

Arthur S. Barnes, of New York City (John F. Brennan, of Yonkers, on the brief), for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

THOMAS, J. The question is whether 15 feet of land, for some years inclosed by a fence, and the site of a house, is part of an established highway, to wit, West street, in the city of Mt. Vernon. If not, the judgment for damages for the removal of the house and an injunction restraining further invasion by the city and its officers should be affirmed. The apparent street, 35 feet wide in front of the house, upon the west line of which the east wall of the house stood, has for over 20 years been used as a public street, as is found, and the 15 feet until the recent events have not been a part of the street. In 1851 one Sacchi, as the owner of 130 acres of land, agreed with two persons, who, as recited, intended to form what should be called the Teutonia Homestead Association, to sell them, their assigns, and associates, such land, which the first party undertook "to be surveyed and laid out into blocks of ground" of dimensions approximately stated, and there were provisions for improvement of the land and terms of sale.

The record does not show that the second parties to the contract made purchases, although it is found that Sacchi did convey lots to several members of the association pursuant to the agreement; but I do not find evidence of it. In any case, there were sold by Sacchi lots 183 and 186 on March 30, 1852, 184 and 185 on July 31, and lot 187 on October 21, 1852, and defendant's husband, Frederick William Weiss, directly or by mesne conveyances, became the owner of them. Each deed conveyed lots "shown on a certain map entitled 'Map of West Mt. Vernon,' lying in the town of East Chester, and county of Westchester, * * * and filed in the clerk's office of Westchester county, for the Teutonia Homestead Association, by Gustavus A. Sacchi, March, 1852," and the lots are designated by lot numbers and defined by numbers of other lots and by the Bronx river laid down on the map. In fact, of lots on West street 10 of a total of 14 were sold by deeds dated March 30, 1852, at which time no map was filed. Indeed, no map in terms "for the Teutonia Homestead Association" is on file, but on May 1, 1852, a map entitled a "Map of West Mt. Vernon" was filed. The map filed shows that West street has a width of 50 feet, and that the lots westerly of that street face on a street so shown, with westerly termini at the easterly bank of the Bronx river. If the lots begin at the easterly line of the river, they must take 15 feet of West street to have the length described in the deed and shown on this map. If they begin in the center of the river, they may have approximately their given lengths without entering West street. But the map does not show the lines of the lots as entering the Bronx river main channel.

[1] But the decision does not turn necessarily upon such question. The purchasers of the lots at the time apparently considered that the lots began on the easterly side of the river, and so took possession of 15 feet on the westerly side of West street and used it, and in some instances built upon it. Indeed, the 15 feet claimed to be a part of West street and so shown on the map fell sharply away from the remaining 35 feet, and the houses, I infer, were built so that the frontage would be on, and not under, the street. The occupation and in-

closure were immediate, and continued for 60 years. What right did this give against Sacchi and persons claiming under him? It was under a claim of title by deed, with every accompanying act required to give title by adverse possession. Sacchi had made an offer to dedicate land to which he had title. The time came when he had not the land to dedicate, for he had lost title to it by reason of title gained by adverse possession by Weiss. A person cannot be regarded as continuing an offer of dedication of land that he has ceased to own.

But the city did not accept the dedication while he did own it, or before he lost title. Not a single act can be mentioned indicating acceptance through the 60 years of orderly and usual occupation for a dwelling with the ordinary front fence. How, then, was there acceptance? It is answered that it was accepted by the public use of the 35 feet and some working of West street to that width, and from that it is argued that there was a constructive acceptance of the road for 50 feet in width. The appellant's theory is that West street for 50 feet became a highway, and that the plaintiff's and earlier occupation could not affect the title. It may for present purposes be admitted that, if the city ever accepted the whole 50 feet, its right could not be diminished. But it never did accept a street more than 35 feet in width.

Passing the question whether Sacchi's tender of dedication of the whole 50 feet was effectual against his grant, yet the vendee took possession, and thereby declared to the grantor, and to the city, that the land was his, and he barred use of it by the city and the public. The public made no sign of dissent. The public traveled the 35 feet, and whatever implication of acceptance arises relates to that; for the acts from which implied acceptance arises have to do with that and nothing else. What its acts involved, it impliedly accepted. If a municipality would show acceptance of dedication by user, it must show the use, or other acts indicating acceptance, and the dimensions of the highway will correspond to the use or the acts. It placed a sewer within the 35 feet; but that does not show that it thereby accepted a dedication of land behind a fence, or under a house, and where such private residence had been for many years, and when the city worked the 35 feet it could not be that there was an intention to work the inclosed premises. The fact is that the plaintiff, upon taking possession, barred all the world from the premises, and the municipality must be content to keep what its acts show it took, and all that it could take.

[2, 3] The widow took the fee. There is a present gift of all the testator's property. Then follows "authority to sell, convey, and mortgage," which might be deemed unnecessary if the gift were absolute. It is added:

"She shall have and enjoy the same and the proceeds and profits thereof as long as she shall remain my widow. But in case she should marry again, then she shall only have and be entitled to such a share as is now provided by the statute."

And there is upon the same contingency a gift over of the residue. I think that the intention was that, if she remarried, she should be

entitled to her statutory interest; if not, she should be entitled to the whole. Hence, she has a fee determinable upon her marriage, and may maintain the action and recover the damages stipulated.

The judgment should be affirmed, with costs. All concur.

