In the Matter of the Application of JEANNIE B. TRULL, as Executrix of WILLIAM C. TRULL, Deceased, Respondent, for a Peremptory Writ of Mandamus against JOHN P. O'BRIEN, as Corporation Counsel or Chief Law Officer of the City of New York.

GEORGE P. NICHOLSON, as Corporation Counsel, etc., Appellant.

First Department, November 14, 1924.

Municipal corporations — mandamus to compel determination of compensation pursuant to Laws of 1895, chap. 1006, by reason of closing street in New York city — limitation of actions — actual knowledge of closing does not start statute running — notice of filing of maps must be given to start statute — period of limitation in Street Closing Act having been declared unconstitutional where there is no actual or constructive notice of filing maps no other limitation applies — actual knowledge of physical facts occurring after statutory period will not again start statute — peremptory mandamus order affirmed.

The petitioner's right to compensation for damages, under chapter 1006 of the Laws of 1895, arising out of the closing of a street in New York city is not barred by the six-year Statute of Limitations contained in the Street Closing Act, and a peremptory order of mandamus to compel the determination of compensation should be affirmed, where, although the petitioner's testator, the owner of the property abutting on the street, had actual knowledge of the closing of the street, he had no notice, either actual or constructive, of the filing of the maps, and the city made no application for the appointment of commissioners to assess the damages sustained. Actual or constructive notice of the filing of the maps is essential to start the Statute of Limitations running.

The period of limitation in the Street Closing Act having been declared unconstitutional where there is no actual or constructive notice, no other limitation applies, since that act was intended to be a complete scheme for the closing of streets in the city of New York and contained its own Statute of Limitations.

Knowledge of physical facts occurring after the expiration of six years from the filing of the map will not again start the statute running.

APPEAL by the defendant, George P. Nicholson, as corporation counsel, successor to John P. O'Brien, from a peremptory mandamus order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 30th day of January, 1924, commanding John P. O'Brien, as corporation counsel, to institute proceedings to ascertain and determine the compensation and recompense due to the petitioner under and in pursuance of chapter 1006 of the Laws of 1895, by reason of closing, abandoning and discontinuing Old Gun Hill road, in the borough of The Bronx, city of New York.

*George P. Nicholson, Corporation Counsel* [*Joel J. Squier* of counsel; *Samuel J. Benson* and *William B. R. Faber* with him on the brief], for the appellant.

*Lawrence E. French,* for the respondent.

CLARKE, P. J.:

The issues arising upon an application for an alternative writ of mandamus were tried before an official referee who reported that applicant's testator, William C. Trull, by deed from Angeline Bohde, dated July 2, 1887, acquired title to certain property which abutted on the Old Gun Hill road, which was prior to February 21, 1879, a public highway; that pursuant to chapter 545 of the Laws of 1890 the local authorities prepared final maps on which appears the New Gun Hill road, omitting therefrom the Old Gun Hill road as a street, avenue or highway; that the Old Gun Hill road was used as a street until the New Gun Hill road was physically opened by its being regulated, graded and opened January 18, 1902, thus legally closing Old Gun Hill road upon which the relator's property abutted; that relator's testator was in continued possession of the property up to the opening of New Gun Hill road January 18, 1902, and continued in possession of said property until his death in 1915; that he left a last will and testament, and letters testamentary were granted to the relator Jeannie B. Trull, and she continues to exercise her duties as such executrix; that the Old Gun Hill road upon which the property in issue abutted was shown on the central district map and on section 18 of the final maps of the city of New York duly filed December 16, 1895, pursuant to chapter 545 of the Laws of 1890, as a street intended to be discontinued and closed; that New Gun Hill road upon which the property in issue abuts was shown on said central district map and upon said section 18 of the final maps, as a street intended to be opened; that it was duly opened, regulated and graded January 18, 1902; and that the city had made no application for the appointment of commissioners to assess the damages sustained by relator.

It further appears that on October 29, 1918, more than sixteen years after New Gun Hill road had been physically opened to public use as a street, the petitioner filed with the comptroller of the city a written statement of claim and demand for compensation for the alleged closing of Old Gun Hill road.

It appears that the late William C. Trull conveyed the premises in issue here by deed dated January 8, 1906, and recorded on the same day in the register's office; that said deed contained the following description of the property sold.

" Beginning at a point formed by the intersection of the westerly side of the Old Road leading from Yonkers to Fordham, known as the Gun Hill Road, with the southwesterly side of the present Gun Hill Road as legally opened, which point is distant southeasterly 106.67 feet more or less from the corner formed by the

intersection of the said southwesterly side of the present Gun Hill Road, as legally opened, with the easterly side of Wayne Avenue, as said Wayne Avenue is shown on the final maps of the 23rd and 24th Wards of the city of New York; and running thence southerly along the westerly side of said Old Road 256.93 feet, more or less, to the point or place of intersection of the said westerly side of said Old Road with the partition line between the former town of Yonkers and the Manor of Fordham; thence nearly a west course along said partition line 1101.40 feet, more or less, to the center line of an old stone wall at or near the southeasterly corner of lands formerly of Richard Dickinson; thence northerly along the center line of said stone wall and along the lands formerly of Richard Dickinson 966.51 feet, more or less, to a point in the southwesterly side of Gun Hill Road, as legally opened, which is distant northwesterly 35.93 feet, more or less, from the point formed by the intersection of the said southwesterly side of Gun Hill Road, as legally opened, with the easterly side of Steuben Avenue, as the said Steuben Avenue is shown on the final maps of the 23rd and 24th Wards of the City of New York, and thence southeasterly along the southwesterly side of said Gun Hill Road, as legally opened, 998.57 feet, more or less, to the point or place of beginning.   *   *   *   Together with all the right, title and interest of the said William C. Trull and said Jeannie B. Trull, of, in and to the land adjacent to the above described premises, lying in that portion of the old Gun Hill Road, now closed, to the center line thereof. Being the same premises conveyed to the said William C. Trull by Angeline Bohde, by deed bearing date July 2, 1887, and recorded in the office of the Register of the City and County of New York in Liber 2081 of Conveyances, page 62, on July 12, 1887, except, however, the portion acquired by the city of New York for the opening of Gun Hill Road and Woodlawn road. Together with the appurtenances and all the estate and rights of the parties of the first part in and to said premises."

It further appeared in evidence that proceedings to open New Gun Hill road from Jerome avenue to the Bronx river, which is one of the permanent streets bounding the block in which Old Gun Hill road alleged to be closed is situated, were instituted by a resolution of the board of street opening and improvement adopted January 3, 1896, and commissioners were appointed by an order entered December 2, 1896, and title vested in the city on June 15, 1897; that the late William C. Trull appeared by counsel on January 25, 1897, and November 12, 1897, in the New Gun Hill road proceeding and proved ownership and damages to his land acquired therein; that certain awards were made to William

C. Trull for his land acquired in the New Gun Hill road proceeding, which abutted on that part of Old Gun Hill road included within the lines of New Gun Hill road and on the part of Old Gun Hill road in question here excluded from the lines of New Gun Hill road, and were confirmed by an order entered June 2, 1902, and were paid to William C. Trull on July 16, 1902, by the comptroller; that William C. Trull had actual knowledge and notice in 1897, the year he made his claim for damages in the New Gun Hill road proceeding, that the part of Old Gun Hill road in question here was excluded from the lines of the New Gun Hill road and was not included within the lines of any other permanent street shown in section 18 of the final maps; that William C. Trull had also actual notice of the closing of Old Gun Hill road at the time of the filing of section 18 of the final maps, to wit, December 17, 1895, by the regulating, grading, etc., of New Gun Hill road on January 18, 1902. In the regulating, grading, setting curbstones, flagging the sidewalks, laying crosswalks, building fences, planting trees, and paving with macadam pavement the carriageway of the said New Gun Hill road from Jerome avenue to the Bronx river, curbstones were set and sidewalks laid over and across Old Gun Hill road involved here, so as to close Old Gun Hill road to all vehicular and pedestrian traffic and to destroy all ingress to and egress from Old Gun Hill road; and Old Gun Hill road at its intersection at practically right angles with New Gun Hill road, by the regulating and grading of New Gun Hill road, was left nearly four feet above the grade of New Gun Hill road and without any means of access from New Gun Hill road, the difference in surface grade of Old Gun Hill road and the established grade of New Gun Hill road being on the east side of Old Gun Hill road four and eight-tenths feet, and on the west side thereof three and one-tenth feet.

Petitioner did not file with the comptroller a claim for damages due to the closing of Old Gun Hill road until October 29, 1918, or nearly twenty-three years after the filing of section 18 of the final maps, December 16, 1895, or more than sixteen years after the regulating, grading, etc., of New Gun Hill road on January 18, 1902, the date petitioner claims Old Gun Hill road was closed, or more than twelve years after petitioner and petitioner's testator admitted that Old Gun Hill road was closed.

The question presented here is whether actual notice of the closing of a street is sufficient to set the Statute of Limitations running.

In *Matter of City of New York* (*Newton Avenue*) (219 N. Y. 399, 406) Judge CARDOZO said: " The validity and effect of that

statute [Laws of 1895, chap. 1006] are no longer open questions in this court. We have held that when a map is filed under section 2, discontinuing an existing highway, all easements, public and private alike, are thereby extinguished (*Barber* v. *Woolf*, 216 N. Y. 7, * * *). * * * The statute says (§ 2) that this result shall follow as soon as any one of the streets that bound the block is opened. We have held that this means as soon as any of such streets are physically opened. * * * The next question is whether there is any statute of limitation which has barred the right to compensation. The owner of this land had no notice, actual or constructive, of the filing of the map. Until the physical invasion of his easements in 1914, he had no notice of an intent to close the existing highway. In such circumstances, the period of limitation prescribed by section 5 of the statute is inapplicable. This was held in *Matter of City of New York* (*Grand Boulevard and Concourse*) (212 N. Y. 538). Our ruling there was limited to claims where highways are discontinued under section 2. It has no application to a closing under section 3, where action proceeds upon notice to the owners. * * * The property owners insist that the taking became complete in 1914, and the city insists that we must date it back to 1895. * * * Our conclusion is that the act of 1895 is constitutional in its extinguishment of private easements; that the easements were appropriated in 1895; and that the claimant's right to compensation has not been barred by limitation."

There can be no doubt that William C. Trull, petitioner's testator, had actual notice of the closing of Old Gun Hill road by its physical regulation and grading on January 18, 1902. The new road in front of his property was at right angles to the old. The old road was elevated four feet above the grade without means of access thereto. In January, 1906, by his deed under seal hereinbefore quoted, Mr. Trull and the petitioner, his widow, admitted that they knew that Old Gun Hill road was closed, because in addition to the boundary description they expressly conveyed all their right, title and interest of, in and to the land adjacent to the above-described premises lying in that portion of Old Gun Hill road now closed to the center line thereof. They owned the fee to that part of Old Gun Hill road in front of and adjacent to the premises in issue here to the center line thereof, being the part of Old Gun Hill road involved here and for which damages are claimed here for the alleged closing thereof.

But it is the filing of the map which starts the running of the Statute of Limitations, and it is of that fact that the Court of Appeals speaks when it says: " The owner of this land had no

notice, actual or constructive, of the filing of the map." It is urged that the actual notice of the physical closing of the street set the statute running. But the statute does not so provide, and the Court of Appeals has held that the six-year limitation was unconstitutional. In the *Newton Avenue* case cited *supra* the court distinctly held " that the easements were appropriated in 1895; and that the claimant's right to compensation has not been barred by limitation." The court also pointed out: " The ʻcity is not expected to wait till property owners have complained. Section 4 makes it the duty of the corporation counsel, as soon as he receives a copy of the map, to apply to the court for the appointment of commissioners to ascertain and determine the compensation of owners whose rights have been extinguished. If, therefore, there has been undue delay, the officers of the city are themselves to blame for it."

The Street Closing Act was, and was intended to be, a complete scheme of closing streets in the city of New York. It provided its own Statute of Limitations for the initiation of proceedings to obtain just compensation for property rights appropriated. That period of limitation having been declared unconstitutional where there was no notice actual or constructive of the event which started it running, no other Statute of Limitations, it seems to me, may be invoked. A clear cut question is here presented, that is, whether knowledge of physical facts occurring after the expiration of six years from the filing of the map may again start the statute. It seems to me that we are required by authority to answer in the negative. No question of the quantum of damages is before us, merely the right to the opportunity to present the claim.

The order appealed from should be affirmed, with ten dollars costs and disbursements.

SMITH, MERRELL, FINCH and MARTIN, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.