ABE SCHLANGER, Respondent, *v.* ISRAEL SCHULMAN and Another, Appellants, Impleaded with THE CITY OF NEW YORK, Defendant.

Second Department, January 26, 1925.

Easements — common grantor conveyed lot to plaintiff to center of street and easement in said street and over roadway which ran at right angles with said street — roadway paralleled and abutted public street — appellants acquired fee in street between plaintiff's property and roadway subject to plaintiff's easement — Laws of 1897, chapter 769, closed said roadway without provision for compensation — map filed by city of New York after plaintiff's purchase apparently obliterated roadway — city conveyed lands in said roadway to plaintiff except part at end of street — defendants built on said street cutting off plaintiff's access to roadway and adjoining public street — assuming that city closed roadway by filing map it substituted public street running parallel to and abutting roadway and did not cut off plaintiff's access to such substituted street — appellants have no right to maintain building in street on which plaintiff's property abutted.

The plaintiff had an easement in the street on which his lot in the former town of Gravesend abutted at the time the appellants constructed a building on the street and they must remove the building since it appears that the common grantor of the parties conveyed a lot to the plaintiff in 1907 extending to the

center line of the street laid out by the grantor; that said street opened on its easterly end on a roadway twenty-five feet wide which paralleled and abutted a public street; that the other end of the street on which plaintiff's property was situated was a dead end; that the deed to the plaintiff granted him an easement in the use of the street on which his lot abutted and in the use of the twenty-five-foot roadway running at right angles with said street; that thereafter the appellants acquired the fee in a portion of said street between the plaintiff's property and the roadway; that chapter 769 of the Laws of 1897 purports to discontinue and close said twenty-five-foot roadway, but does not make any provision for compensation to the owners of easements therein; that a map filed by the city of New York in 1912 apparently obliterates the twenty-five-foot roadway; that in 1919 the city of New York conveyed to the appellants the land covered by the twenty-five-foot roadway with the exception of that part of the roadway which connected the street on which plaintiff's property was situated with the public street that paralleled and abutted the roadway; that appellants acquired their property abutting on said street and a fee of the street subject to the rights of the adjacent and adjoining owners to the right of way over the street.

Assuming that the city of New York legally closed the twenty-five-foot roadway as a street, it, at the same time, substituted the public street running parallel and abutting said roadway and did not by such act prevent the plaintiff from reaching the said public street by passing over that part of the roadway lying between the public street and the end of the street on which plaintiff's property was situated, and the plaintiff's easement in said street on which his lot was situated and in that part of the roadway connecting that part of the street with the public street was not destroyed.

APPEAL by the defendants, Israel Schulman and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 29th day of October, 1924, upon the decision of the court rendered after a trial at the Kings Special Term.

*Louis Joffe* [*Joseph Joffe* and *Louis J. Naftalison* with him on the brief], for the appellants.

*Arthur J. Stern* [*Jacob Kirschenbaum* with him on the brief], for the respondent.

KAPPER, J.:

One Louis Gottlieb, as owner of a plot of land in the former town of Gravesend, conveyed to the plaintiff on June 13, 1907, a lot therein measuring thirty feet by one hundred feet. On April 3, 1911, he conveyed a parcel adjoining this thirty feet on the easterly side thereof and extending easterly to the westerly line of a twenty-five-foot roadway shown on the map of common lands of said town of Gravesend. Later, on June 27, 1911, he conveyed to Catherine Samuels another parcel lying to the southeast of the lot conveyed to plaintiff. These parcels all fronted on a street twenty feet wide and extending through the property from east to west about two hundred feet which the common grantor created

as a street and named "Park place." The twenty-five-foot roadway referred to ran north and south, its westerly line abutting some of these properties. Its easterly line abutted the westerly line of West First street, which had been duly opened and laid out as a public street in 1895. In the conveyance to plaintiff, whose lot was an interior lot with access to the twenty-five-foot roadway and West First street solely by way of said Park place, Gottlieb granted to plaintiff rights in said Park place in the following language:

"Together with all the right, title and interest of the said party of the first part in and to the land in the said Park Place lying opposite the premises above described to the centre line thereof and also together with the easement and right of way over and along the said Park Place from the land or right of way formerly of the New York & Brighton Beach Railway Company to the said 25 foot roadway and also together with the easement and right of way over and across the said 25 foot roadway from the said Park Place to West First Street."

The said railway company's right of way lay close to the westerly portion of the Gottlieb plot and about one hundred feet to the west of plaintiff's lot. On September 24, 1915, the said Catherine Samuels made a grant or release to the defendant Schulman of her interests in the northerly half of Park place for a length of fifty feet and extending to the westerly line of the twenty-five-foot roadway. She subjected this release to the rights "of adjacent and adjoining owners to right of way over the above granted premises." On December 20, 1917, Catherine Samuels made a grant or release to Schulman of such title as she had in the southerly half of said Park place up to said roadway. This gave to Schulman the fee of Park place over its width of twenty feet, and over a length on its northerly half of fifty feet lying west of and up to the twenty-five-foot roadway, and on its southerly half for a distance of sixty-four feet likewise west of and to the roadway, subject, as stated, to existing easements of right of way.

By chapter 769 of the Laws of 1897 the twenty-five-foot roadway was declared to be discontinued and closed. The act made no provision for the rights of abutters or compensation to them or to owners of easements. It was a simple legislative pronouncement declaring the street closed, and without further phraseology. In 1912 the city of New York caused to be filed a map entitled, "Showing the laying out of West Second Street." This street, as its name indicates, was to the west of West First street, a distance of two hundred feet. The map appears to have obliterated the said twenty-five-foot roadway. Defendant Schulman on December

1, 1921, conveyed all his right, title and interest in and to said Park place to the defendant West First Street Realty Co., Inc. Those two defendants are concededly identical in interest, Schulman being president of the company. Early in April, 1923, Schulman and his company commenced the construction of a building twenty feet wide and seventy-five feet long, the twenty-foot dimension abutting on West First street and the entire length of the building lying for its westerly fifty feet in the bed of Park place and the remaining twenty-five feet on and across the twenty-five-foot roadway. This building, if permitted to remain, completely pockets plaintiff and his property in the interior of the Gottlieb plot and prevents him from any access to the twenty-five-foot roadway and to West First street, both of which he clearly had before the said defendants' act. The testimony, accepted by the learned Special Term, establishes that Schulman was notified in due time by plaintiff not to build on his right of way on Park place; that Park place between West First and West Second streets was an open street and in use as an open way for a long time, and that the damage to plaintiff's property by reason of its being thus closed in was substantial and serious, amounting, according to an expert, to $5,000. The judgment appealed from directs the appellants to remove said building.

On March 4, 1919, the city of New York, evidently acting upon the theory that the twenty-five-foot roadway had been discontinued as a public way and that the land therein, formerly of the town of Gravesend, had reverted to it, conveyed by a quitclaim deed to the defendant Schulman two strips of land each extending for a width of twenty-five feet across the said roadway and located therein for a length respectively of one hundred feet and sixty feet. It is important to note that the southerly line of the conveyance of the northerly one hundred feet ran to the northerly line of Park place as projected across the twenty-five-foot roadway, whilst the northerly line of the southerly sixty feet ran to the southerly line of said Park place as so projected, and that neither description included any portion of Park place or its projection across the twenty-five-foot roadway to West First street. This fact was expressly found by the Special Term, and was asserted by the defendant city of New York upon the trial without objection from the appellants, the corporation counsel stating, " The property covered by this deed does not include the roadway in front of the so-called Park Place." Indeed, appellants' counsel added to the statement that " Everybody concedes that." The judgment appealed from included an adjudication against the city of New York (defendant here, but not appealing), " that the said twenty-five-foot roadway

has never been legally closed, so as to deprive plaintiff of his said easements, and that the plaintiff has never been deprived of his right of easement therein and thereover."

Appellants concede that the act of 1897 which purported to discontinue and close the twenty-five-foot roadway was ineffectual to cut off plaintiff's easement. They further say that "The defendants in building on Park place, in violation of the plaintiff's right of way, committed a wrong, but it was merely technical in its nature, made in the use of their own property and equity will not interfere." They base this upon the further argument that by the filing of the map of 1912 and by virtue of the provisions of chapter 1006 of the Laws of 1895 (being the act providing for the discontinuance and closing of streets, and known as the Street Closing Act),* the plaintiff's easement in and over so much of Park place as is now owned by the appellants is of merely nominal value because it "leads to a piece of private land owned by the city," namely, the alleged discontinued twenty-five-foot roadway.

In the light of the concessions of the appellants, we need not dwell at length upon the rule, now elementary, that a deed of lots bounding them upon a street, not public because not accepted by the authorities, is nevertheless as between grantees and grantor a dedication of the street to the use of the grantees. (*Bissell* v. *New York Central R. R. Co.*, 23 N. Y. 61; *Wiggins* v. *McCleary*, 49 id. 346, 348; *Haight* v. *Littlefield*, 147 id. 338, 342, and cases cited.) It must also be deemed settled that when a map is filed in compliance with the provisions of the act of 1895 (*supra*), establishing that an existing highway has been discontinued, all easements, public and private alike, are thereby extinguished. (*Matter of City of New York* [*Newton Ave.*], 219 N. Y. 399; *Barber* v. *Woolf*, 216 id. 7). But the same and other authorities hold that the destroyed easement must be duly compensated for in proper and appropriate proceedings. (*Matter of Newton Avenue* [*Harris*], 173 App. Div. 15; *Astor* v. *Thwaites*, 170 id. 624.) And some expressions of the courts indicate that upon the closing of a street under the act of 1895 it is the duty of the corporation counsel to institute condemnation proceedings to ascertain and determine the compensation to be paid to the persons whose private easements have been extinguished by the act and that such duty may be compelled by mandamus. (*Astor* v. *Thwaites, supra; Matter of Trull* v. *O'Brien*, 210 App. Div. 628.) The appellants urge that plaintiff should mandamus the corporation counsel to institute proceedings to condemn his easement. This remedy might be

---

* Amd. by Laws of 1911, chap. 879, and since amd. by Laws of 1923, chap. 752.— [REP.

Second Department, January, 1925. [Vol. 211

available were the city here contending that his easement had been extinguished. The attitude of the city, contented with the findings and judgment by not appealing, is that the easement has not been destroyed but is existent, and with that view we are in accord.

The learned Special Term justice in a very able opinion reached the conclusion that the twenty-five-foot roadway was not closed by the filing of the map of 1912 for the reason that the steps required on the part of the city to accomplish that purpose under the act of 1895 were not taken. In the view which we think should here obtain it is not necessary to consider the provisions of that act, as we shall assume that the map of 1912 succeeded in discontinuing the twenty-five-foot roadway as a public highway. The physical situation existing at the time Gottlieb made the various conveyances mentioned above was clear enough. Here were two public streets, the twenty-five-foot roadway and West First street, both running north and south and intersecting Park place either actually or as projected. Both the roadway and West First street abutted and adjoined each other. It was clearly foreseen that the roadway might become needless, as the essential public and private interests would readily be subserved by West First street. When, therefore, the authorities filed their map of elimination of the twenty-five-foot roadway they substituted West First street as the public street to which all lateral streets and ways were given access. At best the twenty-five-foot roadway must be regarded as having been *abandoned* and West First street *accepted* by the public as a new way in place of the old. (*Lembeck & Betz Eagle Brewing Co.* v. *Rosenstein,* 168 App. Div. 563, 568.) Assuming, therefore, that the twenty-five-foot roadway was discontinued as a public highway the surrounding circumstances forbid an implication that access to West First street by way of Park place was closed to this plaintiff's interior lot. On the contrary, the act of the city, regarding itself as the successor of the town of Gravesend and the owner of the bed of the twenty-five-foot roadway, when it conveyed parts of the bed which lay both to the *north* and to the *south* of Park place leaving the latter unaffected by its grant, clearly imported that Park place as a way to West First street which, as stated, abutted and adjoined the twenty-five-foot roadway, remained unimpaired, and continued to the plaintiff and other owners whose lands abutted on Park place or were within the confines of the Gottlieb plot their easements of access to West First street. In several essential features this case is similar to the frequently cited authority of *White's Bank of Buffalo* v. *Nichols* (64 N. Y. 65), which holds that, where lands abut a private street the fee of which is not in the abutters, and where

the street subsequently became a public way but was thereafter narrowed by the authorities to one-third of its former width the abutters became possessed of an easement of access to the street as narrowed, notwithstanding the fee of the discontinued portion was purchased by another; and that while such a grantee is entitled to be declared the owner he obtains nothing but the barren right of ownership because of the fact of his land being burdened perpetually with the abutter's easement of access to the street as narrowed.

In *Reynolds* v. *Interborough R. T. Co.* (206 N. Y. 587) there was under consideration the effect upon plaintiff's property of the abandonment by the public authorities of a strip of what was formerly the public road. It was held that by the abandonment the public easement alone therein was extinguished, the court (p. 590) adding: "But it left the private easements, which were appurtenant to the property, unaffected and the record does not disclose that they were ever conveyed, or condemned. If the title reverted to the original owner, the land was not released from the burden of its servient easements. He might have, by the reversion, title to the fee of the soil; but it is a naked, or barren, title. The land originally conveyed upon the public highway would retain its private easements, however the highway might be abandoned, or closed, by the public authorities, until they were conveyed, or taken by condemnation. They are independent of the public easement and are indestructible in their nature, either by the acts of the public authorities, or by any act of the grantors of the premises. They were appurtenant to the premises over the Old Boston road and they continued, and continue, over the Third avenue as that street was regulated by the statute. To all intents and purposes, as to the defendants, the situation of the easements is as though the westerly line of the avenue made the plaintiff's easterly boundary."

The holding in the cases cited *supra*, that the effect of a map filed pursuant to the provisions of the act of 1895 is to extinguish all easements, public and private, is accepted, as it must be, but its relation to the present case has its clear limitation solely to any further use of the roadway for public travel north and south, and not to the maintenance of so much of it as may be necessary for the purposes of subserving existing rights of way across it on lateral streets that connected with it and which, unless so continued, would prevent interior owners or abutters from having access to the substituted public street, namely, West First street.

The litigation does not concern the city, and as to the outcome between the plaintiff, the owner of the dominant estate, and the defendant, the wrongdoer, who without right or authority invaded

plaintiff's easement by building thereon and cutting it off, the city is not here objecting.

I advise that the judgment appealed from be affirmed, with costs.

Present — KELLY, P. J., RICH, MANNING, YOUNG and KAPPER, JJ.

Judgment unanimously affirmed, with costs.