THE PEOPLE OF THE STATE OF NEW YORK ex rel. ELIAS B. MINARD, Appellant, *v.* JAMES H. DONOVAN, as Town Superintendent of Highways of the Town of Lloyd, Ulster County, New York, and Others, Respondents.

Third Department, March 19, 1930.

*John Rusk, Jr.* [*George Rusk of* counsel], for the appellant.

*DeWitt W. Ostrander,* for the respondents Terhune, Walker and Thorn.

Davis, J. The relator, a party interested, is attempting by this proceeding to determine whether a certain road in the town of Lloyd, Ulster county, is a legal highway.

The proceeding is in the form of mandamus to compel the superintendent to clear the highway of obstructions placed there by persons claiming the lands. These persons, who deny that the road is a public highway, but claim it is only a private way, have been by order brought in as parties defendant. The town superintendent makes return in substance that he has no sufficient knowledge of the facts in issue to determine whether he is legally authorized to remove the obstructions, and very commendably adopts an impartial attitude toward the controversy carried on by those owning lands abutting the road in question.

There are two main highways running nearly parallel west from the village of Clintondale in this town. The southerly one is generally called the " State highway " and the one farther north is known as the " Hurd road." The distance between them is about a half mile. The road in question runs northerly from the State road to the Hurd road. There are no houses on this connecting road but it furnishes to those living along the State road convenient means of access to the railroad station on the Hurd road and is a short cut between the two roads.

The origin of the road is in general agreed upon though records in the town clerk's office concerning it are lacking. In 1890 Frank Wardwell owned lands adjacent to the State road, extending northerly approximately two-thirds of the distance to the Hurd road. On his lands there was a grove known as the " Picnic Woods " where large picnics and other public assemblages were held. This grove was reached from the south through Wardwell's farm land. Apparently there was also a way to reach the grove through private lands from the north. In 1891 improvements were made on the Wardwell entrance and the roadway was filled and graded to and beyond the grove. This was accomplished by volunteers who were assembled by Wardwell and were directed in their work by him and his brother-in-law. Hurd and Freer were owners of land between the Wardwell property and the Hurd road on the north. On August 21, 1890, Freer by deed quitclaimed a three-rod strip at the east boundary of his lands to the town of Lloyd for highway purposes. This made connection with the Wardwell road. The original deed cannot be found but it was recorded in the Ulster county clerk's office on May 8, 1891. The contesting defendants

questioned the validity of this deed as establishing the highway because formal proof is lacking of its delivery and acceptance. The fact that it was recorded raises the presumption that it was recorded by the grantee and the proof of record is *prima facie* and presumptive evidence of delivery. (*Sweetland* v. *Buell*, 164 N. Y. 541, 552; *Munoz* v. *Wilson*, 111 id. 295, 305.) The record furnished constructive notice to the town and its inhabitants of the existence of the deed and its purpose. We attach little significance to the non-production of the original. It is common knowledge that with frequent changes in the incumbent of the office of town clerk and with no building provided for keeping records, town records are often lost. The fact that there is no record in the town clerk's office in regard to this deed or the highway, does not prove that such highway does not exist by dedication and acceptance, actual or implied. (*Witte* v. *Koerner*, 123 App. Div. 824.)

So with the Freer strip added to the way provided by Wardwell, there was access to the grove from both directions and an open road from one highway to the other, apparently created with the designed purpose of public use. It appears that other voluntary work was subsequently done by the inhabitants in making the way passable. The road in its early history was much used and was of great convenience to those residing in the vicinity. The travel over it was by all kinds of vehicles and was continuous in summer and winter. The efforts on the part of the respondents to belittle or explain such use are unavailing in view of the evidence. Voluntary work was soon superseded by that done by " pathmasters " of the road district and those " warned out " by them under the old system to work their road tax. The advent of the automobile caused a gradual diminution of travel but the road was still in use by horse-drawn vehicles particularly by those of persons living nearby, and automobiles occasionally passed over it. Naturally less work was done when the " money system " of maintaining highways was adopted for it was not then customary to work cross roads every year unless the superintendent was urged by those interested; but there is evidence of repeated instances of repairs over the entire length of the road until the past few years by the different highway commissioners and town superintendents with men, teams and a scraper and by loads of gravel drawn in and of filling and grading — all at town expense. On one occasion the superintendent having been requested to keep the road in repair, was apparently in doubt as to the legal status of the highway and sought the advice of the supervisor of the town and was told by him to make repairs. The condition of the road is described as " fairly good " and at all times it has been passable, except as it may have been temporarily obstructed by present owners of the lands hostile to its continued use.

There are several methods by which highways may be created. One is by dedication through offer and implied acceptance, or where the owner throws open his land intending to dedicate it to the public and the latter use it for such a length of time that they would be seriously inconvenienced by an interruption of the enjoyment. (*City of Cohoes* v. *D. & H. C. Co.*, 134 N. Y. 397.) When the land has been so dedicated no formal laying out is necessary. It is sufficient if the public accepts it as laid out and dedicated by the owner, as indicated by its public use for travel and implied acceptance. (*People* v. *Loehfelm*, 102 N. Y. 1; *Witte* v. *Koerner*, supra; *Town of Corning* v. *Head*, 86 Hun, 12.) There is no real conflict of authority on the question of such creation of a public highway except as governed by the facts in particular cases. Generally, where convincing proof is lacking of dedication, acceptance and general public use, courts look unkindly on the efforts of those having in mind some mercenary or other unworthy purpose rather than the convenience of the public in attempting to establish a mere private way as a public highway, and such efforts would work injustice. (*Speir* v. *Town of New Utrecht*, 121 N. Y. 420; *Johnson* v. *City of Niagara Falls*, 230 id. 77; *Smith* v. *Smythe*, 197 id. 457; *Matter of Wallace Ave.*, 222 id. 139; *People* v. *Underhill*, 144 id. 316; *People* v. *Sutherland*, 252 id. 86; *Nichols Copper Co.* v. *Connolly*, 208 App. Div. 667; affd., 240 N. Y. 596.) The questions of dedication and acceptance are those of intention to be determined from the particular facts of the case under consideration. (*Matter of City of New York* [*E. 177th St.*], 239 N. Y. 119.)

We have here a well-established dedication by Wardwell who owned the lands prior to 1905, with no attempt by his grantees to repudiate such dedication until recently. It has been found by the referee that a deed by one of these defendants conveying title to lands subsequently acquired by the relator, referred to this roadway as a " road." This fact has legal significance. (*De-Witt* v. *Van Schoyk*, 35 Hun, 103; affd., 110 N. Y. 7; *Matter of Village of Olean* v. *Steyner*, 135 id. 341, 345; *Schlanger* v. *Schulman*, 211 App. Div. 601, 605.)

The question of acceptance on the part of the town, we think, is effectively disposed of by the grant from Freer for highway purposes, useless unless used in connection with the Wardwell road, by the repeated acts of maintenance and repair and the acquiescence in general public use as a highway for more than twenty years. It was not necessary that either dedication or acceptance should consist of a formal act. By the mere lapse of time, authorized use ripens into a right and the effect is the same as a recorded act. (Highway Law, § 209.) If so established, the highway could not

be discontinued or abandoned by neglect without resort to legal proceedings prescribed by statute. (Highway Law, § 191 *et seq.*, as amd.; Id. § 234, as amd. by Laws of 1915, chap. 322.) The acts of present owners of adjacent lands disavowing the earlier dedication and seeking to prevent its use can have no legal effect. (*People ex rel. DeGroat* v. *Marlett,* 41 Misc. 151; affd., 94 App. Div. 592; *Driggs* v. *Phillips,* 103 N. Y. 77; *Amsbey* v. *Hinds,* 46 Barb. 622; affd., 48 N. Y. 57.) There seems no essential thing lacking to establish the legality of this highway. If the time has come when its useful purpose is ended, it must be discontinued by legal methods and not by the arbitrary acts and summary judgment of interested individuals.

We differ, therefore, from the conclusions reached by the learned referee on the merits and not as a matter of discretion. We find the highway with lands dedicated by one owner to a public use and by another through purchase. We find the continuous, convenient use by the public for a long period of time as highways are customarily used. We find the town authorities contributing to its maintenance and repair and accepting and adopting it as a highway.

The practice adopted in the proceedings was somewhat irregular but, as the parties stipulated in relation thereto and proceeded without objection, we will not on this appeal give consideration to questions of irregularity in the methods adopted. (*Matter of New York, L. & W. R. R. Co.,* 98 N. Y. 447, 453; Civ. Prac. Act, § 105.)

The final order (called in the record " judgment ") should be reversed on the law and the facts, and the application for a peremptory order of mandamus should be granted, with costs in this court and in the court below against all respondents except respondent Donovan. The proceeding may be remitted to Special Term to issue and enforce the order.

Certain findings of fact are reversed and all conclusions of law are disapproved. Other findings proposed by the relator will be made. These will be stated in the decision and order.

VAN KIRK, P. J., WHITMYER, HILL and HASBROUCK, JJ., concur.

Final order reversed on the law and facts, and application for a peremptory order of mandamus granted, with costs in this court and in the court below against all respondents except respondent Donovan. The proceeding is remitted to Special Term to issue and enforce the order.

Findings of fact Nos. 14, 16, 17, 19, 20, 21, 22, 23, 24, 27 and 28 are reversed, and all conclusions of law are disapproved. The court finds relator's proposed findings of fact Nos. 4, 5, 6, 10, 13, 15, 16, 18, 19, 22, 25, 26, 27, 28, 29, 30, 31, 32, 35, 36, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 52, 53, 54, 55, 56, 57, 58, 63, 64, 66, 68, 70, 72, 74, 80, 84, 86, 87, 88, 89, 90, and all conclusions of law.