Mary Petrie, Plaintiff, *v.* City of Rochester, Defendant.

Supreme Court, Equity Term, Monroe County, July 6, 1954.

*James R. Waring* and *Merwin Morehouse* for plaintiff.

*Honora A. Miller, Corporation Counsel (James A. Boomer* of counsel), for defendant.

Brasser, J. Action by plaintiff for an injunction requiring defendant to relinquish possession of a part of plaintiff's real property and to redeliver the same to the plaintiff, restored in its original condition.

Plaintiff is the owner of a residential lot situate on the south side of Lang Street (formerly Linden Street) in the city of Rochester. In the summer of 1953, the City of Rochester, pursuant to an ordinance, widened and resurfaced Lang Street, installing concrete gutters on each side thereof. In accomplishing this work, the city leveled and graded the area between the north edge of the sidewalk and the south edge of the gutter running along the south side of the resurfaced highway, and the plants, shrubs and bushes owned by the plaintiff and growing in the area were uprooted and destroyed. The plaintiff contends that in making the improvements the city appropriated lands owned by her.

The area of which Lang Street is a part was known, in the middle period of the nineteenth century, as the Kedie farm. A substantial part or all of this farm was acquired prior to April, 1871, by Samuel Moulson. In 1871, Moulson surveyed the area bounded on the west by Clinton Street, on the north by Norton Street and including Borchard Street, Linden Street (now Lang Street) and Joiner Street (now Remington Street), and on May 4, 1871, duly filed the map subdividing the area and laying out these streets. A further map which is virtually a duplicate of the first map was later, on April 22, 1882, duly filed. These maps, particularly the map filed in May, 1871, clearly indicate the intention of Moulson to lay out Linden Street (now Lang Street) as a public highway forty-nine and five-tenths feet in width. Thereafter, Moulson conveyed many building lots on both sides of Linden Street, the title to the lots referring to Linden Street as defined in the maps previously filed. These lots were deeded by Moulson and by subsequent owners to the center of the street and measurements of the lots made accordingly. These acts alone are equivalent to dedication. *(Oak Hill Country Club* v. *Town of Pittsford,* 264 N. Y. 133; *Matter of City of Brooklyn,* 73 N. Y. 179; *People* v. *Underhill,* 144 N. Y. 316; *Bissell* v. *New York Central R. R. Co.,* 23 N. Y. 61.)

In due course of time, one Julius Ewald, acquired title to Lot No. 70 as shown on the Moulson maps and in turn subdivided Lot No. 70 conveying one of the subdivisions to the plaintiff. In 1913, after Ewald acquired title, he prepared a new map of the area which he owned which was duly filed. The Ewald map specified that Lang Street east of Remington Street was

thirty-five feet in width, making the depth of Lots Nos. 1, 2 and 3, formerly Lot No. 70 of the Moulson subdivision, seventy-five and five-tenths feet in depth. It is on the basis of the Ewald computations that plaintiff contends that the new roadway encroaches upon her land.

Counsel for plaintiff in his brief narrows the issue by stating that the sole question is " did the defendant accept the offer of dedication by Moulson by its subsequent acts and conduct? " No records can be found showing that the city formally accepted the dedication of Linden Street as shown on the Moulson maps.

Despite no formal acceptance by the city, the city began to exercise supervision and control of Lang Street and to approve the installation of public utilities shortly after the turn of the century. In fact, in 1899, the name of Linden Street was changed to Lang Street by ordinance. The ordinances over the years provided for the installation and maintenance of sewer facilities, water mains, sidewalks, street lights and the establishment of survey monuments in Lang Street between North Clinton and Remington Streets. It does not appear that any of the owners of property abutting on Lang Street, either on the north or south side, have ever disputed the exercise of supervision over the highway by the city and, in fact, the owners of Lots Nos. 69 and 71, adjoining Lot No. 70 owned by the plaintiff, which three lots were subdivided by Ewald from the original Lot 70 as shown on the Moulson map, have been content to accept the services rendered by the city and its agencies, to pay the assessments and to raise no objection to the street improvement as an encroachment upon their respective premises. Moreover, grantees whose premises abut on Lang Street filed petitions with the city from time to time prior to 1913, praying for public improvements to be installed under and over the street.

The sidewalk on the south side of Lang Street has been in existence many years. After the recent road resurfacing there remained an area about five feet in width between the north edge of the sidewalk and the south edge of the concrete gutter.

The questions herein of dedication and acceptance are those of intention to be determined from the particular facts. To constitute a public highway by dedication, there must not only be absolute dedication to public use by the owner, but there must be an implied acceptance and formal opening and use by proper authorities. *(Niagara Falls Suspension Bridge Co.* v. *Bachman,* 66 N. Y. 261; *Cook* v. *Harris,* 61 N. Y. 448; *Flack* v. *Village of Green Island,* 122 N. Y. 107, 113; *People* v. *Brooklyn & Queens Tr. Corp.,* 273 N. Y. 394.)

If there is an offer and an implied acceptance, no formal laying out or formal act of dedication and acceptance is necessary. *(People ex rel. Minard* v. *Donovan,* 228 App. Div. 596.)

Plaintiff asserts that the death of Samuel Moulson, allegedly in 1896, tended to revoke the unaccepted offer. (Citing *Nichols Copper Co.* v. *Connolly,* 208 App. Div. 667.)

There is no evidence that the Moulson offer was revoked or withdrawn, either actually or by implication. Prior to Moulson's death, an ordinance was adopted authorizing the installation of a sewer in Linden (Lang) Street. This sewer was completed by July, 1893, prior to Moulson's death. *(People* v. *Brooklyn & Queens Tr. Corp., supra.)*

Ordinances authorizing water main installation were adopted in 1907; sewer installation in 1893 and 1907; sidewalks in 1900 and 1908; survey monuments in 1908 and 1922; street paving in 1913.

After the offer of dedication of the street, forty-nine and five-tenths feet in width, purchasers of lots thereon had vested rights to have the street remain such width. A contrary conclusion would enable subsequent grantees obtaining title by erroneous descriptions to vary the width of the street to meet their individual requirements. *(Driggs* v. *Phillips,* 103 N. Y. 77; *Village of Pleasantville* v. *Siciliano,* 141 Misc. 283.)

Plaintiff also asserts that Lang Street was not used and worked for its entire width nor length and therefore the city must relinquish its attempted usurpation.

The acts by the city constitute a legal acceptance of the Moulson dedication, and although the street was not used and worked throughout its entire area, the acceptance, was in my judgment, complete. *(Village of Pleasantville* v. *Siciliano, supra.)*

Were this not so, an abutting property owner could create nuisances in the area between sidewalks and paved highways with impunity.

Plaintiff lays great stress on the rule in *Weiss* v. *City of Mt. Vernon* (157 App. Div. 383, 386, affd. 215 N. Y. 657), wherein the court held that " If a municipality would show acceptance of dedication by user, it must show the use, or *other acts* (italics mine) indicating acceptance, and the dimensions of the highway will correspond to the use or the acts." Plaintiff has apparently overlooked, in addition to " other acts " heretofore enumerated, the adoption by the council of the City of Rochester of an ordinance in 1930, pursuant to section 26 of the General City Law, establishing an official map, showing the streets, etc., theretofore laid out and adopted. This map accompanying the

ordinance, showing the width and location of Lang Street is conclusive and plaintiff cannot now, twenty-four years after its adoption, legally attack it, or the ordinance making it effective.

An incidental result of the interruption by this court of the use of Lang Street as a city street at this late date would be the required termination of public utility services in the area by the city with disastrous consequences to property owners.

Upon the facts as found herein by the court, the complaint is dismissed.

Submit judgment accordingly.