Chief Judge Breitel (dissenting).
I dissent. On no view of the facts should plaintiff, brought to causing his own serious injury by his voluntary intoxication, be allowed to recover from the City of Kingston for damages suffered when he wandered onto the New York State Thruway and was struck *561 by an automobile. His attack is the familiar one on the good Samaritan, in the persons of two police officers, for not having, in retrospect, done enough.
The order of the Appellate Division should be affirmed, and the action stand dismissed.
On the night in question, the Kingston city police, responding to a complaint, found plaintiff Parvi and his companions in the midst of an uproarious argument behind a commercial establishment located on Broadway, in Kingston. Close by were railroad tracks, still in use by locomotives and freight trains. Plaintiff and his companion Dugan, both intoxicated, were asked if they had any place to go, and they said not. They were then taken to the police car, and informed that they would not be placed in jail on this holiday weekend, but, in accordance with their wishes, would instead be transported to a point out of the area where they could "sleep it off” without getting into further trouble. Dugan and Parvi repeatedly expressed their appreciation and gratitude at the option given them.
As the drive out of town proceeded, one of the men suggested a place where they might be left. The police officers, however, solicitous of the safety of their charges, declined this request, noting that the area suggested provided no shelter and, significantly, that the Thruway was "right there”. As an alternative, the officers, with the consent of plaintiff and Dugan, dropped the men off at "Coleman Hill”, the site of a former golf course, a spot often used by campers and equipped with several "lean-to” shelters. From the relative safety of this sheltered area, the two men, some time later, managed to wander onto the Thruway, over 350 feet away, where Dugan was killed and Parvi injured by passing automobiles.
On these facts, Parvi contends both that he was falsely imprisoned and that the city, through its police officers, was negligent. Neither claim withstands analysis, and both should fall.
In Broughton v State of New York (37 NY2d 451, 456, cert den 423 US 929), this court enumerated the elements necessary to sustain a false imprisonment claim: (1) intention to confine, (2) consciousness of confinement, (3) lack of consent to confinement, and (4) lack of privilege. But before those factors may even be reached, there must be evidence of a confinement. In this case, there was none, but, instead, merely an exclusion from one particular area and activity (see Restate *562 ment, Torts 2d, § 36, esp Comment b; Prosser, Torts [4th ed], p 42).
So long as Parvi did not remain out in public, intoxicated, creating a public nuisance, and endangering his own life, the officers had no wish to interfere with Parvi’s freedom of movement. Since Parvi could suggest no suitable place where the officers might take him, the officers chose another site. Apparently, Parvi and Dugan were pleased with the choice. And it should not matter that Parvi testified, although he could recall nothing else, that he was ordered into a police car "against [his] will”. (On cross-examination, he said he recalled nothing that day.) Parvi’s "will” was to stay where he was, intoxicated, in public. In order to deprive him of that one choice, which the officers could do without subjecting themselves to liability for false imprisonment, the officers had to transport Parvi some place else. He was given a choice as to destination. He declined it, except for his later suggestion of an unsafe place, and the officers made the choice for him. There was no confinement, and hence no false imprisonment.
Moreover, plaintiff has failed even to make out a prima facie case that he was conscious of his purported confinement, and that he failed to consent to it. His memory of the entire incident had disappeared; at trial, Parvi admitted that he no longer had any independent recollection of what happened on the day of his accident, and that as to the circumstances surrounding his entrance into the police car, he only knew what had been suggested to him by subsequent conversations. In light of this testimony, Parvi’s conclusory statement that he was ordered into the car against his will is insufficient, as a matter of law, to establish a prima facie case.
Plaintiff’s negligence claim is equally without merit. The police officers had no duty to leave Parvi absolutely free from danger in any form. Instead, they owed plaintiff only a duty to exercise ordinary care (Dunham v Village of Canisteo, 303 NY 498, 502). That duty was discharged by leaving plaintiff at a camping ground equipped with "lean-to” shelters and removed from the holiday bustle of the city, where Parvi had been drinking for the past two or three days. Since it was not foreseeable that Parvi, rather than "sleeping off” his intoxication, would wander away, climb over a guardrail, and be struck by an automobile on the New York State Thruway, there was no breach of duty, no negligence, and hence, no liability (see Cartee v Saks Fifth Ave., 211 App Div 606, 609- *563 610, affd 303 NY 832). If, perchance, he was in search of more drinks, there was no chance of giving him absolute safety except by locking him up. It should not be the rule, common to an era long well past, that every drunkard must be locked up on being observed as intoxicated in public.
In removing Parvi and Dugan from the center of town, the police officers were performing a recognized public function. In his intoxicated state, Parvi, with his companions, was creating a public nuisance. It had been a long-standing practice in Kingston to transport publicly intoxicated people out of the center of town. The practice was followed in this case, and it is not, in a smaller city (population 25,544), an inherently unreasonable way of dealing with public intoxication. It avoids the humiliation and degradation to the offender, of maintaining him in jail. It is a commonplace that it is no longer acceptable, albeit it still continues, to treat the intoxicated and alcoholic in this fashion, as one does criminals.
Moreover, transplanting plaintiff from the center of town to an isolated area on the outskirts was protective of plaintiff himself. While a man in an intoxicated state can always be a hazard to himself, he is much more so when located in the center of town, in the midst of city streets, railroad tracks, molesters, muggers, street vehicles, and without shelter, than he would be in an isolated area. But one may not deprive him of reasonable access, after he recovers his sobriety, to food and other necessities. Had the police placed the two men out of reasonable access to any road, the isolation would have been inhumane. And any road would under some circumstances be dangerous. At least, the Thruway was bordered by a guardrail, and the record does not indicate the distance to the other accessible roads, including the road by which they reached Coleman Hill.
Restatement, Torts 2d, defines an act as negligent when it involves a risk of harm "of such magnitude as to outweigh what the law regards as the utility of the act or of the particular manner in which it is done” (§ 291). Here, the risk was slight; the police officers obviously considered safety in choosing the camping site to deposit the two men, and reasonably regarded the site as safe. More significant, by removing Parvi from town, they removed him from a place of greater danger, and halted a public nuisance as well. The police conduct, therefore, was not unreasonable under the Restatement test. (See, also, Restatement, Torts 2d, §§ 292, 293.) The *564 same analysis applies under section 324 of Restatement, Torts 2d, dealing with the duty of one who takes charge of helpless persons, since the officers materially improved plaintiffs position by removing him from town.
Since, therefore, there was no breach of duty to plaintiff, as a matter of law, the negligence count, too, was properly dismissed.
There is hubris in the bringing of an action of this kind. Parvi is one of a pair of drinkers, derelicts perhaps, engaged in making a public nuisance of themselves in the center of a small Hudson River Valley city on a holiday weekend. The police of that city, a tiny force, are not sisters of charity or baby-sitters.
Basically, the legal issues in this case are not difficult. And the justice issues are even less so. A drunken man, a pitiable character, is found with his companions in the middle of town. Sympathetic police officers offer to take the men any where they choose, but the poor fellows have no place to go. So, rather than locking them up for a holiday weekend, the officers deposit the men in a suburban setting, where some shelter is available. The officers are thanked for their kindness. But, in the end, the efforts of the officers are to no avail, as the drunken men wander away from safety and into danger. A tragedy, certainly. A miscalculation, perhaps. But even with the aid of hindsight, the facts in this case are not the stuff on which tort liability may be premised.
Accordingly, I dissent, and vote to affirm the order of the Appellate Division.
Judges Gabrielli, Jones, Wachtler and Cooke concur with Judge Fuchsberg; Chief Judge Breitel dissents and votes to affirm in a separate opinion in which Judge Jasen concurs.
Order reversed, with costs to abide the event, both causes of action reinstated and a new trial granted, with leave to respondent to move at Trial Term to amend its answer.