## Frances Beardslee *vs.* Lavinia Beardslee.

Where a testator, by his will, devised as follows : " It is my will and order that my beloved wife L. shall be *master of my estate*, both real and personal, so long as she remains my widow, subject to the payment of the different legacies out of the same hereafter mentioned to be paid ;" and then followed bequests of certain legacies to the children of the testator ; a devise of all the real estate the testator might die seised of, to his son J. J. B. and to his heirs and assigns forever ; and a bequest unto all his children, share and share alike, of the residue of his personal estate to be divided after the widowhood of his wife should cease ; and his wife was appointed sole executrix, and guardian of the testator's infant children ; *Held,* that it was the intention of the testator to give his wife the use of his entire estate, (subject to the payment of the legacies,) during her widowhood ; and that by consequence she took a life estate in the premises, subject to be defeated by her marriage ; there being nothing in the will to control or *overrule*, that construction.

Where the grantor of an estate on condition enters for condition broken, the dower of the wife of the grantee falls with the estate of her husband.

Thus where, by the terms of a lease for the life of the grantor, the estate demised was *conditional*, liable to be *defeated*, and subject to a re-entry, by the non-payment of rent, the condition having been broken, and the lessor having re-entered for that cause ; *Held* that the lessor became re-invested with her entire original

Beardslee *v.* Beardslee.

estate, free from any incumbrance of dower in favor of the widow of the lessee.

The usual allegation, at the end of a *case*, that the facts therein stated are taken subject to all legal exceptions and objections, and with liberty to turn the case into a bill of exceptions, amounts to nothing more than a statement that the case is made subject to the legal conclusions arising upon the facts contained therein. And it will not authorize a party to object, upon the hearing, to the *character* of a portion of the evidence, after he has *admitted* all the facts stated in the case, and *consented* to the introduction of the evidence, without objection.

THIS was an action of ejectment, brought by the plaintiff to recover her dower in certain lands in the county of Herkimer. The cause was tried at the Herkimer circuit in October, 1848, before Justice GRIDLEY, without a jury. On the trial, the facts in the case were admitted by the respective parties, for the purposes of this suit; and by consent of parties, under the advice of the court, a verdict was taken for the plaintiff that she recover one third part of the lands for which the suit was brought, as her dower in the same, subject to the opinion of this court upon a case containing the facts which were so admitted on the trial. The facts admitted on the trial were as follows: John Beardslee, senior, for many years previous to his death and at the time of his death, resided in the town of Manheim in Herkimer county, and at the time of making his last will and testament, hereafter mentioned, he was seised in fee and was possessed of the lands in which dower was sought to be recovered in this suit. He died on the 25th of October, 1825, seised and possessed of the lands in question, in which dower was sought to be recovered. On the 12th of August, 1825, the said John Beardslee, senior, made and executed, in due form of law to devise real estate, his last will and testament, in these words:

"*Imprimis:* It is my will and order, that my beloved wife Lavinia shall be master of my estate, both real and personal, so long as she remains my widow, subject to the payment of the different legacies out of the same hereinafter mentioned to be paid. Item. I give and bequeath unto my daughter Polly, the wife of Nicholas N. Van Alstyne, the sum of two hundred

and twenty nine dollars to be raised out of my estate, one year after my decease. I also give to the said Polly the further sum of five hundred dollars, to be paid to her one year after she has lawful issue; if she gets no lawful issue, the last bequeath of five hundred dollars to be null and void. Item. I give and bequeath unto my daughter Laura, single woman, the sum of one thousand five hundred dollars, to be raised and paid to her out of my estate in five equal annual instalments, the first instalment to be paid one year after my decease. Item. I give and bequeath unto my son Augustus Beardslee the sum of three thousand dollars, to be raised and paid to him out of my estate in six equal annual payments after my decease. Item. I give and bequeath unto my daughter Sarah, the sum of one thousand five hundred dollars, to be raised out of my estate and to be paid to her in five equal annual payments after she arrives at the age of twenty-one years. Item. I give and bequeath unto my daughter Helena Augusta, the sum of one thousand five hundred dollars, to be raised out of my estate and paid to her in five equal annual payments after she arrives at the age of twenty-one years. Item. I give and bequeath unto my son John J. Beardslee and to his heirs and assigns forever, all my real estate I may die seised of at my decease. Item. I give and bequeath unto all my children, share and share alike, the residue of my personal estate, to be divided after the widowhood of my wife ceases. And lastly, I do nominate and appoint my wife Lavinia to be guardian of my infant children and my only executrix in this my last will and testament, hereby revoking all former wills by me made."

The testator, at the time of his death, left the said will in full force, and the same was, after his death, proved as a will of real and personal property, and recorded as such in the office of the surrogate of the county of Herkimer. The testator left a widow, Lavinia Beardslee, the defendant in this suit, who had remained the widow of said testator ever since his death, and was still a widow. The said Lavinia, after the death of her husband, the testator, took possession, under the will, of all the lands of which the testator died.

seised, embracing the lands in question in this suit, and contin-
ued in the possession and enjoyment of the same until the
making of the lease or agreement hereafter stated, dated April
10, 1837.   On the 10th of April, 1837, Lavinia Beardslee and
John J. Beardslee made and executed a lease or agreement em-
bracing the lands in question in this suit.   By this lease, Lavinia
Beardslee, " as executrix of John Beardslee, deceased," demised
the farm in question to John J. Beardslee, his executors, ad-
ministrators and assigns, during the life of the lessor, for the
annual rent of $200, with a clause of re-entry in case of non-
payment of the rent reserved.   The lease contained a reserva-
tion from the demised premises, for the use of the lessor and
her family, of a suit of rooms in the east part of the dwelling
house, and the east garden, with certain other privileges.   It
contained covenants by the lessee, for the payment of the rent
reserved ;  and to furnish to the lessor certain specified articles
of provisions annually ;  the keeping for a cow and ten sheep ;
all necessary fire wood ;  a carriage and horses and driver for
her use ;  and for the payment of all taxes and assessments by
the lessee.   On the part of the lessor there was a covenant for
quiet enjoyment.   And there were mutual covenants by the
parties, that no other families than their own should be allowed
to occupy the dwelling house, or any part thereof ;  and that
the lease should not be assigned by either party, without the
consent of the other.

From the time of the execution of this lease or agreement
on April 10, 1837, up to June 13, 1843, the said Lavinia Beards-
lee and John J. Beardslee occupied the lands in question accor-
ding to their respective rights under the provisions of said will
and lease, or agreement, and in accordance with the reserva-
tions, conditions and limitations therein expressed.   In May
term, 1843, of the supreme court, Lavinia Beardslee commenced
an action of ejectment against John J. Beardslee, to recover
possession of the lands described in the declaration in said
cause, which lands embraced the lands in controversy in this
suit ;  and a judgment by default, after filing an affidavit of the
amount of rent due, was taken in said action.   The record of

said judgment was docketed June 8, 1843, a writ of possession thereon was issued and executed June 13, 1843, and the said Lavinia Beardslee re-entered and took possession of said lands under said writ of possession by virtue of the recovery in eject-ment, and had remained in possession there of up to the day of trial, claiming the same under said will.   Previous to the com-mencement of this suit the plaintiff, by her attorney, demanded of the defendant possession of one-third part of the lands, as her dower, and the defendant refused to give such possession. John J. Beardslee mentioned in the will of said John Beards-lee deceased, as the son of said testator and the devisee of the real estate, intermarried with the plaintiff in this suit Novem-ber 2, 1835, and the said John and Frances Beardslee lived together as husband and wife until the 2d day of April, 1846, on which day the said John J. Beardslee departed this life.   The lands in question in this suit were embraced in the lease or agreement, dated April 10, 1837, and in the recovery in ejectment against John J. Beardslee in May term, 1843.   The facts above admitted were contained in a case made by the parties, and were taken subject to all legal exceptions and objections, and with liberty to either party to turn the case into a bill of exceptions or a special verdict.

*L. Ford*, for the plaintiff.

*H. Denio & C. A. Benton*, for the defendant.

*By the Court*, GRIDLEY, J.   Several questions material to the decision of this cause, have been discussed by the counsel for the respective parties, which we will proceed to consider in their order.

I. It is claimed by the counsel for the defendant, that the defendant took, under the will of her deceased husband, a life estate, subject to be defeated by her marriage, in the real es-tate of which he died seised; and that his son, the deceased husband of the plaintiff, took a remainder in fee after the expi-

Beardslee *v.* Beardslee.

ration of the particular estate upon which it was limited.  On the other hand it is insisted by the plaintiff's counsel, that the defendant took nothing under the will, and that the deceased son took a present estate of inheritance, subject only to the payment of the legacies bequeathed by the testator.  If the latter construction shall prevail, then the plaintiff is entitled to recover in this action, unless she be estopped, as the defendant claims she is, by the execution of the lease hereinafter mentioned.  In support of this latter position, we are referred to *Coke on Lit.* 47, *b* ; 12 *John.* 357 ; 12 *Wend.* 57, *and* 1 *Comstock's Rep.* 251, 252, 258.)  Without expressing any opinion upon the question of estoppel, we are of the opinion that it was the intention of the testator to vest in the defendant an estate in the premises during the continuance of her widowhood.  The clauses of the will upon the construction of which the question arises, are the following : "Imprimis : It is my will and order that my beloved wife Lavinia shall be master of my estate, both real and personal, so long as she remains my widow, subject to the payment of the different legacies out of the same hereafter mentioned to be paid."  Then follow bequests of legacies to the children of the testator amounting to $8229, after which comes the devise to John J. Beardslee in the following words :  "I give and bequeath unto my son John J. Beardslee and to his heirs and assigns forever, all my real estate I may die seised of, at my decease."  Then follows a bequest unto all his children, share and share alike, the residue of his personal estate to be divided after the widowhood of his wife ceases ; and lastly, he nominates his wife sole executrix of his will and guardian of his infant children.

This will, it must be confessed, is unskilfully drawn, and the meaning of the testator is not entirely free from doubt.  Looking, however, to the whole will, and considering that the testator manifestly intended to dispose of his entire estate ; and bearing in mind the affection and confidence expressed in the will for his wife ; and the onerous and responsible duties which he imposed upon her, we cannot believe that he intended to leave her without any provision for herself.  And yet, this is

the necessary conclusion, unless the first clause in the will is to be construed as conferring upon her the *estate ;* that is, the *use* of his real and personal property during her widowhood. Again ; we think that character and significance are given to the expression, *"master of my estate, both real and personal,"* by the words *" subject to the payment* of the different legacies," &c. It expresses the same meaning as though he had said, " I make my beloved wife the *owner* of my estate both real and personal, during her widowhood, subject to the payment of the several legacies," &c. It is also worthy of observation, that the same clause, and the same words, are employed to describe her interest in the personal estate, as in the real. And we see that the personal estate was not to be divided until the widowhood of the defendant should cease. We therefore conclude that the intention of the testator was to give his wife the use of his entire estate, (subject to the payment of the legacies,) during her widowhood, and by consequence that she took a life estate in the premises, subject to be defeated by her marriage. There is nothing in the will to *control* or *overrule* this construction. It is true that the word *"master"* is not the most apt word, by which to designate one as the owner of an estate ; but in 20 Wendell's Rep. 53, a testator directed in his will that his wife should *" have the care"* of his property so long as she remained his widow, for the maintenance of herself and the children ; and that expression was held to convey an estate in the lands, by which an action for dower brought by the widow of a deceased son of the testator, who claimed under a naked devise of the fee, similar to that devised to John J. Beardslee in the will now under consideration, was barred. So too it has been held that when a testator declared one " executor of all his lands," there being obligations connected with the devise, he gave an *estate in* the lands, (5 *B. & Al.* 785.) Again ; " the use and benefit of all my estate," has received a similar construction. In 25 *Wendell,* 633, the words " rents and profits" were adjudged to carry an estate in the land for life, notwithstanding a devise of the inheritance, expressed in such words as, standing alone, would have conveyed a present

estate in possession ; and this was so held against a daughter whose share in the inheritance was expressed without reservation, while the shares of her two sisters were given subject to the widow's right.   These authorities seem to show very clearly that we are not transcending the legitimate rules of construction when we interpret this will so as to give the defendant an estate in the premises in question ; and also that the devise to John J. of the inheritance, without designating the time of the commencement of his estate, does not make that devise repugnant to that which gave the defendant an estate *durante viduitate*.   And the last of the above cited cases shows that the omission to state the time when John J. should come to the possession of his inheritance, while the period for the distribution of the residue of the personal estate was fixed by the will, furnishes no argument against the. interpretation which gives an interest in the lands to the defendant.   There is one fact which would seem, at first view, to favor the plaintiff's construction of this will ; and that is this, that John having no pecuniary legacy, and not being able to come to his real estate nor to his share of the residue of the personal estate, during the widowhood of the defendant, was subject to be left for a period without any provision at all.   John, however, was but a child in 1825 when the testator made his will, and the period when he would need an advancement was so distant that it probably escaped the attention of the testator.   This is far more likely than that he could have intended to invest his infant son with the immediate possession and income of one of the most valuable farms in the county of Herkimer, thus leaving his other children with greatly disproportioned legacies, and his wife without a dollar.

II.  The plaintiff's counsel insists that, if the defendant did take an estate in the lands, during her widowhood, nevertheless, the lease executed on the 10th of April, 1837, by the defendant, for the term of her natural life, operated as a *surrender* to the husband of the plaintiff, of the estate of the defendant, and that the two estates became merged and united in one ; so that the husband became seised of the entire estate, *in præ-*

*senti*, and his wife, by consequence, became entitled to dower in the same. This proposition is met by the defendant with two answers.

(1.) It is said that the reservations in the lease, of a part of the premises, for the use and occupation of the defendant, and the various restrictions and limitations contained in the lease, prevented the lease from operating as a surrender, and rendered the merger and union of the two estates legally impossible. It is also insisted that, by the provisions of the revised statutes, in the event of the death of the husband of the plaintiff before the expiration of the term (an event which has actually happened) the residuary interest in the term goes to the personal representatives of the deceased lessee ; and that for this reason there can be no such union and merger, in law, as to give the plaintiff a right to dower. In support of this proposition the defendant's counsel has cited a great number of authorities, among which are the following : 6 *Com. Dig. tit. Surrender*, *H.* 316. *Id. I.* 2, 318, 319. 2 *Bl. Com.* 326. 4 *Kent's Com.* 101. 2 *Cowen*, 258. 4 *Kent*, 12, 355. 2 *Cruise's Dig. tit.* 17, *Reversion*, 4, 12, 13, 15. *Co. Lit. f. u.* 7, *a*. *Com. Dig. tit.* 3, *Estates for Life*, 93. 2 *R. S.* 82. 4 *Kent*, 267. It is doubtless true that the two estates must be re-united, so as to constitute ONE estate, or the wife cannot be endowed. It is laid down in 4 *Kent*, 39, that "The husband must be seised of a freehold in possession, and an estate of immediate inheritance in remainder or reversion, to create in the wife a title to dower. The freehold and inheritance must be consolidated, and be in the husband *simul et semel* during the marriage, to render the wife dowable." This would seem to be plain language, and yet there are authorities cited in connexion with this proposition, by the learned commentator, which render the true doctrine quite uncertain. It appears that the courts, in their leaning in favor of, and with the view of sustaining, the right to dower, have been satisfied with a kind of *sub modo* union of the two estates. And accordingly it has been decided that the union will be regarded as sufficient to create the title to dower, when an estate for years intervenes between the particular estate and the remainder.

(*Bates* v. *Bates*, 1 *Ld. Raym.* 326.)   It is said to be otherwise where the intervening estate is not a chattel interest, but an estate for life.   (4 *Kent*, 39, 40.)   But

(2.)  A second answer to the plaintiff's proposition is that, by the terms of the lease, the estate demised to the husband of the plaintiff, by the defendant, was *conditional*, liable to be *defeated*, and subject *to a re-entry* by the *non-payment of rent ;* and that upon condition broken and a re-entry for that cause, the defendant became re-invested with her entire original estate, free from any incumbrance of dower.

This would seem to be a natural consequence arising out of the nature of the contract between the parties.   The *estate—* the *entire estate*—is *conditional*, subject to be defeated by the happening of a condition subsequent.   The same act which conveys the estate to the husband, creates in the wife the only right to dower which she can claim.   The dower right in the wife is an incident, merely, of the conditional estate of the husband, and it would seem to follow as a necessary consequence that it should itself be conditional also.   Upon the same principle upon which our supreme court have held (15 *John.* 458) that in the case of a deed and mortgage *simultaneously* executed for the purchase money, the right of the wife of the grantee was liable to be defeated by the foreclosure of the mortgage for the non-payment of the purchase money.   So in the case of the lease, the rent is in the nature of purchase money, payable by instalments ; and by parity of reasoning, the estate being subject to the condition, from its creation, the dower right of the lessee should partake of the conditional nature of the principal estate.   This doctrine is fully borne out by the authorities.   It is laid down in *Cruise, tit.* 13, *ch.* 1, § 13, that " It is a rule of law that a condition must defeat or determine the *whole* estate to which it is annexed, and not in *part* only."   Again, in chapter two of the same title, at sections 59 and 60, we find the principle stated thus : " Where a person enters for a condition broken, the estate becomes void *ab initio,* and the person who enters becomes again seised of his original estate, and is in the same situation as though he had  never conveyed it away.

And as the entry of the feoffor or the feoffee, for a condition broken, defeats the estate to which the condition was annexed, so it defeats all rights and incidents annexed to that estate; for upon the entry of the feoffor he becomes seised of a paramount estate. *In consequence of this principle, if a man seised of a conditional estate marries, or a woman seised of such an estate takes husband, and has issue, and afterwards the condition is broken and the grantor enters for the breach, he will avoid all titles of* DOWER *and curtesy."* In *tit.* 6, *Dower, ch.* 3, § 33, the author says, " There are several cases in which dower and curtesy cease upon the determination of the estate; 1st. Where the fee is evicted by title paramount; 2d. Where the seisin of the husband is wrongful and the heir is remitted, by which the wrongful estate is determined, the right to dower ceases; 3d. *When the donor enters for the breach of condition, it defeats the right to dower and curtesy."* See also *Co. Lit. f.* 203, *b* ; *Id.* 218, *b* ; *Id. fol.* 202, *a, b, and note* 90 ; *Id.* 241, *a, note* 170, where it is said, " As entry for breach of condition defeats the estate of the tenant on condition ; so it defeats his *wife's right of dower,"* &c. The same principle is found, expressed in the most direct and unequivocal language, in 5 *Vin. Abr. p.* 315, *Condition, o. d, pl.* 1 ; 9 *Id. Dower,* 1, *pl.* 4 ; *Id. Dower,* 1, *pl.* 3, *p.* 235; 3 *Com. Dig.* 492, *Dower, A.* 5. If this doctrine needed confirmation, it might be added that the authorities cited and relied on by Cruise, Viner and Comyn, are the very highest in the law.

The only case or dictum which has been furnished us, inconsistent with this current of authority, is found in *Co. Littleton,* 31 *a,* (4 *note* 180,) and purports to have been taken by the annotators from Hale's Manuscripts, and it reads thus : " *Lessee for life surrenders to him in reversion on condition, and enters for condition broken. Yet the wife of the reversioner shall be endowed. (Noy, n.* 284. *Osmund's case, Noy,* 66.)" This case, which is relied upon as the authority for the principle contained in this note, is thus stated in· *Noy,* 66 : " Osmund and wife surrender on condition, &c. Plea, *Ne unq. seiz. of dower.* (*See Dyer,* 41.) And by the court. If a man bargain and sell his

lands by *three words only*, and makes livery, that yet the bar-
gainee (although that the indenture was never enrolled) may
plead *that*, for a bargain includes a *grant.*" It needs no argu-
ment to show that this case furnishes no authority for the prin-
ciple laid down in the note in question. There is still less
foundation for this principle in the case referred to in *Dyer*, 41.
That was a writ of dower, to which the tenant pleaded *ne unq.
seiz. dower*, and on the trial the facts disclosed were these ; a
feoffment made to the husband of the defendant, in fee, which
on the face of the deed showed *seisin* in the husband. In an-
swer to this, it appeared that long before the feoffment the hus-
band was seised of land to him and his first wife in special tail,
and they made a discontinuance and took back an estate in fee
by the feoffment aforesaid, and died seised of such estate;
wherefore the heir who was tenant in tail was *remitted*, and
*therefore* the *second wife* not dowable thereof. And though
the court held this to be the law, yet they allowed the deman-
dant to recover, because these facts could not be proved *under
the issue between the parties.* This case, it will be seen, turned
on a question of pleading, but is in truth a case belonging to a
class of authorities directly opposed to the principle contained
in the note in question. This note having been disposed of,
we believe the current of authority remains unbroken, in support
of the general proposition, that when the grantor of an estate
on condition enters for condition broken, the dower of the wife
falls with the estate of the husband. This leads us to the only
remaining question; which is

III. Whether it is proved in this case that the defendant has
re-entered for condition broken ? This proposition consists of
three branches. (1.) Was the condition broken ? That is proved
by the production of the lease, which is a part of the case, upon
which it appears that the rent is due, and no proof of its pay-
ment. (2.) Has the defendant actually re-entered ? That also
appears by the case. (3.) Did she enter on *account of condi-
tion broken*? That the condition was broken, and that the de-
fendant having a right to re-enter for that cause has *actually*
re-entered, would seem to lay the foundation for a strong pre-

Beardslee *v.* Beardslee.

sumption that she re-entered for that cause. The provisions of the revised statutes, (2 *R. S.* 505, §§ 30, 31, 32,) contain the directions for a re-entry for non-payment of rent, by ejectment. And if these directions have been complied with, no other evidence can be necessary under this branch of the case. The plaintiff's counsel, on the argument, objected to the judgment record and execution in the suit against the husband of the plaintiff, as being competent evidence against her. On looking into the case, however, it will be found that no evidence was objected to, but that all the facts were *admitted by the parties.* Now the *fact,* necessary to make the chain of evidence perfect, is the re-entry by the defendant for the breach of the condition of the lease. And we find it *admitted* in the case, that the de fendant, in May term, 1843, commenced her action of eject ment against the plaintiff's husband, for the land in question, and filed her affidavit of the amount of rent due, &c. and took a judgment by default against him on the 8th of June, 1843. And that on the 13th of June the defendant re-entered by virtue of a writ of possession, and has remained in possession ever since. It is also stated in the case that a copy of the record, writ of possession with the sheriff's return, and the affidavit filed by the defendant, are annexed and make a part of the case. Now we repeat that all this evidence was put in by consent and admission, without any objection except that stated in the last clause of the case, which is the usual allegation, that the fore going facts are taken subject to all legal exceptions and objec tions, and with liberty to turn the case into a bill of exceptions, &c. Now we regard this as nothing more than that the case is made subject to the legal conclusions arising upon the facts contained therein. Had it been the intention of the plaintiff's counsel to reserve the right to raise an objection to *the character* of the evidence offered to prove the re-entry, he should, instead of admitting the *fact* in so many words, have objected for that rea son, and then the appropriate testimony might have been given.

Our conclusion on the whole case is, that judgment must be entered for the defendant.

Judgment for the defendant.