In the Matter of the Estate of THOMAS F. SMALLMAN, Deceased.*

Surrogate's Court, Kings County, November 7, 1931.

* See, also, 139 Misc. 501.

*Esquirol & Esquirol,* for Ralph Smallman.

*Alvah W. Burlingame,* for City Bank Farmers Trust Company.

*Cadwalader, Wickersham & Taft,* for the Salvation Army.

*Richard W. Mount,* for creditor and contestant Dr. James F. Pilcher.

*Simpson, Thacher & Bartlett,* for Yale University.

*James Avitable,* for Andrew Biagini.

WINGATE, S.   So far as the research of counsel or the independent investigation of the court has been able to disclose, the questions here litigated respecting the partial invalidity of the will under section 17 of the Decedent Estate Law are absolutely of first impression.

The issue is raised by Ralph Smallman, a cousin of the decedent, who is a legatee under the " seventh " item of his will.   The propriety of objection by this party is violently contested by the charities on the ground that he was not a next of kin of the decedent, the latter having been survived by his wife and father.   His capacity to object is, therefore, presented for determination at the outset.

As was indicated at the time of the former hearing in this case (*Matter of Smallman,* 138 Misc. 889), the assets of the estate are insufficient to pay all of the legacies in full.   In consequence, the general legacy given by the will to the objecting respondent in this proceeding must partially abate.   It is his contention that under the provision of section 17 of the Decedent Estate Law as existing prior to the amendment effected by chapter 229 of the Laws of 1929, where a decedent was survived by any of the relatives expressly named in the statute, it is the right of any person who would benefit by a declaration of the partial invalidity of the will by reason of excessive gifts to charity, to raise the question of such

invalidity, irrespective of whether he was a next of kin of the decedent and thus entitled to distribution in the event of intestacy.

It is, of course, unquestionable under the statute applicable in this proceeding that a person who was a next of kin of the decedent and who would benefit by a partial intestacy, may question the validity of the testamentary disposition although not expressly named in the statute. (*Matter of Sloat*, 141 Misc. 710.) The question, however, of whether a mere legatee whose legacy has partially abated by reason of inadequacy of assets, can raise this question, has apparently never previously been presented for adjudication.

In those cases in which there has been a complete testamentary disposition of a decedent's estate, the beneficiaries named in the will are substituted by act of the testator for the natural distributees of an intestate. In effect the Statutes of Distribution, which regulate the disposition of a decedent's property where his personal desires have not been expressed, are based on a presumption founded on the general inclinations of mankind as to his wishes respecting the devolution of his property where he himself has not validly indicated his desires. It is the natural supposition, in the absence of such countervailing expression on the part of the decedent, that he would wish his effects to pass to those bearing the nearest relationship to him by reason of blood or marriage. Where, however, a valid dispositive instrument has been executed by him, such presumed intention gives way to the positive knowledge of his desires thereby evidenced, and for all purposes the provisions of the testamentary document, to the extent of its terms, are substituted for the statutory provisions which would have regulated the devolution of his property in the absence thereof.

In the early authoritative determination on this subject, contained in *Harris* v. *American Bible Society* (2 Abb. Dec. 316), the court (at p. 323) refers with approval to the reasoning of Judge JOHNSON in *Harris* v. *Slaght* (46 Barb. 470). In the opinion thus referred to, the court indicates (at p. 505) that the enactment in question is in reality one resting on a mortmain policy of the State, and that it has " a far broader and more general design than the protection and assistance of certain specified relatives of a testator, and looks rather to the establishment of a general public policy, than to the advancement of private personal interests." He then concludes as follows: " This being so, it is difficult to perceive, or suggest, any satisfactory reason why any heir at law of the testator, entitled to share in the estate, in case of the failure of the will, or the establishment of its invalidity in whole or in

part, may not come into court in some authorized manner and have an adjudication upon such will."

In *Harris* v. *American Bible Society (supra)* the court says (at p. 322): "The general term held, and I think, correctly, that the prohibition is peremptory, and may be insisted on by any person who would derive a benefit therefrom."

This statement in effect is quoted and approved in the leading case of *Robb* v. *Washington & Jefferson College* (185 N. Y. 485, 491), which in turn is likewise quoted and approved in *Decker* v. *Vreeland* (220 N. Y. 326, 331) and in *Matter of Opdyke* (230 App. Div. 290, 294; modfd. on other grounds, 255 N. Y. 255)

It is entirely true, as pointed out by the counsel for the several charities, that in all adjudications in which the question has been raised, the devolution resulting from the declared partial invalidity of the will, has benefited only the statutory distributees of the decedent. A study of these cases, however, will demonstrate that in each instance where this has taken place, the charitable gift which was declared to be partially void, was a gift of the residue of the estate. On fundamental principles an invalid gift of a portion of the residue cannot be employed for the purpose of making up a deficiency in the gifts under any other portion of the will. As the court points out in *Cochrane* v. *Schell* (140 N. Y. 516, at p. 537): "Where the devise or gift was of a residue, as to part of which the disposition fails, that part will not accrue in augmentation of the remaining part, as a residue of a residue, but instead of retaining the nature of residue, devolves as undisposed of." This principle has been consistently followed. (*Wright* v. *Wright*, 225 N. Y. 329, 340; *Herzog* v. *Title Guaranty & Trust Co.*, 177 id. 86, 96; *Matter of Malstedt*, 140 Misc. 245, 256; *Matter of Hartfield*, 139 id. 214, 217, and cases cited.)

It follows, therefore, on primary principles, that since in the cases cited by the charities the invalid testamentary disposition accrued to the benefit of the next of kin of the testator, due to the fact that the gift was one of residue, the language of such cases, holding that the question of the violation of section 17 can be raised by the next of kin, is not to be construed as a converse authority for the position that where the person to be benefited by a declaration of invalidity is one other than a next of kin, such person may not validly interpose an objection. No such adjudication has ever been made, and the propriety of objection by a next of kin in the cases cited was merely an adjudication of the principles applicable to the particular facts before the courts for adjudication.

That the objector in this proceeding would inevitably benefit

as a consequence of such a declaration of the partial invalidity of the present will, is self-evident on the facts of the case. The language of section 17 provides that a charitable gift coming within the description of the section " shall be valid to the extent of one-half, and no more." The inevitable connotation of this language is that as to the other one-half, the testamentary gift shall be void. On fundamental principles a void or lapsed legacy falls into the residue of the estate. On this point the Court of Appeals says in *Riker* v. *Cornwell* (113 N. Y. 115, at p. 127): " I think the doctrine is firmly established, by the reported cases and by the text books, that where the residuary bequest is not circumscribed by clear expressions in the instrument and the title of the residuary legatee is not narrowed by special words of unmistakable import, he will take whatever may fall into the residue, whether by lapse, invalid dispositions or other accident." (See, also, *Albany Hospital* v. *Albany Guardian Society*, 214 N. Y. 435, 445.)

If then any of the charitable legacies under the will at bar were declared partially void, the invalid portion would fall into the residue of the estate in the first instance. But since it has been determined (*Matter of Title Guarantee Trust Co.*, 195 N. Y. 339, 344, 345) that there can be no beneficial enjoyment by a residuary legatee until general legatees have been paid in full, it would follow that the amount thus deducted from the charitable bequests would accrue to the benefit of the general legatees to the extent necessary to make up the abated amounts of their legacies. This point was fully discussed in another connection in the former opinion of this court (*Matter of Smallman*, 138 Misc. 889, 911–913). (See, also, *Matter of Botsford*, 37 App. Div. 73, 77.)

On principle and authority, therefore, the court is of the opinion that under the terms of the statute here applicable the objection is properly raised by this abated legatee.

The next question for determination is whether or not the total of the bequests to charities exceeds the amount permissible under section 17 of the Decedent Estate Law. This depends in large measure upon the value to be placed on the gift in trust to the widow. The language of the will in this connection is as follows:

" *Twenty-second.* I give and bequeath unto my trustees hereinafter named, and their successor or successors, the sum of Two hundred and twenty-five thousand 00/100 ($225,000.00) Dollars, in trust nevertheless, to be invested and re-invested from time to time, as need for re-investment occurs, and I direct that all the net income, interest, issues and profits of every description from said trust fund, shall be paid in quarterly installments, to my

wife, Jane C. Smallman, for and during the term of her natural life, but I direct that if she shall re-marry, that the said payments thereafter shall cease, and I further direct that upon the re-marriage or death of my said wife, Jane C. Smallman, that the net principal sum and net undistributed income therefrom, shall thereupon be paid to Yale College, at New Haven, Connecticut, to be used for the building of a wing for the Yale Medical School, to be known as the Jane Smallman Wing, for the treatment of the sick poor."

Analyzing the bequest thus made, it is seen that it is a gift of the income from the fund to the widow for life, subject to a divesting condition that it shall cease in the event that she shall remarry.

The nature of the estate granted under such circumstances has been the subject of frequent judicial declaration.

In *Ludlow* v. *N. Y. & Harlem R. R. Co.* (12 Barb. 440) the court says (at p. 442): " The deed contains one of those conditions known to the law as conditions subsequent. Its effect was to vest the fee simple of the estate in the defendants, subject to be defeated by their omission to complete the road over the lands granted, within the time specified. * * * 'Where a condition must be performed before the estate can commence, it is called a condition precedent. But when the effect of the condition is, either to enlarge or to defeat an estate already created, it is then called a condition subsequent.' "

The opinion of the court in *Underhill* v. *Saratoga & Washington R. R. Co.* (20 Barb. 455) reads in part as follows (at p. 459): " There can be little doubt, I apprehend, but that the provision in the deed was a condition subsequent. No precise technical words are required to make a condition precedent, or subsequent. The construction must always be founded on the intention of the parties. (3 Cruise's Dig. 468, tit. 32, ch. 24, sec. 70; 1 id. tit. 13, ch. 1, sec. 10.) The same words have been construed both ways, and much has been made to depend on the order of time in which the conditions are to be performed. If the act or condition required does not necessarily precede the vesting of the estate, but may accompany or follow it, and if the act may be as well done after as before the vesting of the estate, or if from the nature of the act to be performed and the time required for its performance it is evidently the intention of the parties that the estate shall vest, and the grantee perform the act after taking possession, then the condition is subsequent. (*Blacksmith* v. *Fellows*, 3 Seld. 401, 414; *Parmelee and others* v. *The Oswego and Syracuse Rail Road Co.*, 2 id. 74, 80; *Martin* v. *Ballou*, 13 Barb. 119, 133; *Grant* v. *Johnson*, 1 Seld. 247; *Tompkins* v. *Elliot*, 5 Wend. 496; 1 *Hilliard's Ab.*

247, § 5; *Finlay* v. *King*, 3 Peters, 346, 374; *Stuyvesant* v. *The Mayor of New York*, 11 Paige, 414.) "

The effect of a gift or conveyance subject to such a condition subsequent, has repeatedly been held to vest the entire estate in the grantee.

In *Fowler* v. *Coates* (201 N. Y. 257) the court said (at p. 262): " West's conveyance to Conover was upon condition subsequent and, in such case, the legal presumption being that the condition will be performed, the grantee took every interest and estate in the real property. Nothing remained in West except the right to take advantage of a breach of the condition subsequent; which is neither an estate, nor an interest, in real property, nor an assignable chose in action."

This same result was attained in *Vail* v. *Long Island R. R. Co.* (106 N. Y. 283, 287), where it was held that " until the contingency happens the whole title is in the grantee."

That this principle has been consistently applied up to the present time, is demonstrated by the comparatively recent decision of *Calvary Presbyterian Church* v. *Putnam* (249 N. Y. 111), in which the court says (at p. 115): " No one disputes the proposition that, as long as the conditions existed unbroken, all interest in the estate remained out of the grantor and his heirs. Until the contingency happens the whole title is in the grantee. (*Vail* v. *L. I. R. R. Co.*, 106 N. Y. 283, 287.) Neither the grantor nor his heirs possessed anything except a right to take advantage of a breach. This is not an estate. (*Fowler* v. *Coates*, 201 N. Y. 257)" (See, also, *Mott* v. *Richtmyer*, 57 N. Y. 49, 66.)

A gift to a widow, to continue during her widowhood, possesses an identical nature and similar characteristics to the grants which were the subject of the foregoing decisions. This is demonstrated by a considerable number of cases, from which a few may be selected, almost at random, as containing presently pertinent language.

In *Beardslee* v. *Beardslee* (5 Barb. 324) the following appears (at p. 330): " We therefore conclude that the intention of the testator was to give his wife the use of his entire estate, (subject to the payment of the legacies), during her widowhood, and by consequence that she took a life estate in the premises, subject to be defeated by her marriage."

In *Weiss* v. *City of Mount Vernon* (157 App. Div. 383; affd., 215 N. Y. 657) the Appellate Division of this department said (at p. 387): " The widow took the fee. There is a present gift of all the testator's property. Then follows ' authority to sell, convey and mortgage,' which might be deemed unnecessary if the

gifts were absolute. It is added, ' she shall have and enjoy the same and the proceeds and profits thereof as long as she shall remain my widow. But in case she should marry again, then she shall only have and be entitled to such a share as is now provided by the statute,' and there is upon the same contingency a gift over of the residue. I think that the intention was that if she remarried she should be entitled to her statutory interest; if not, she should be entitled to the whole. Hence, she has a fee determinable upon her marriage and may maintain the action and recover the damages stipulated."

Surrogate O'BRIEN, in *Matter of Johnson* (133 Misc. 566), reached the same conclusion, saying (at p. 567): " In *Matter of Frankel* (N. Y. L. J. June 12, 1915) this court held that a devise of real estate to testator's widow ' as long as she remains my widow ' gave to her a fee, but with the condition subsequent, which operated to reduce it from an absolute fee to a determinable one. The opinion in that case states ' A fee may be limited conditionally or with a defeasance.' (Citing Real Prop. Law, § 31; *Vanderzee* v. *Slingerland*, 103 N. Y. 47; *Norris* v. *Beyea*, 13 id. 273; *Matter of Miller*, 11 App. Div. 357; *Chapman* v. *Moulton*, 8 id. 64.) The surrogate thereupon determined that the widow was seized of the fee in the real property devised to her by the will, subject to defeasance upon her remarriage. The husband in the present case, we hold, takes the real property in question, subject to the limitation that if he remarries he shall become divested of any interest in the property which will thereupon pass to the daughter, Adelaide." (See, also, *Matter of Schriever*, 221 N. Y. 268, 271; *Matter of Halvordson*, 137 Misc. 75, 76.)

The practical effect of these decisions is that a gift, grant or conveyance subject to a condition subsequent, vests the entire estate in the grantee for all purposes, from the moment that the grant becomes effective, and such estate remains in all respects identical with an unqualified grant unless and until the occurrence of the divesting condition.

On these authorities, it is, therefore, apparent, in the case at bar, that the divesting condition not having occurred, the widow is presently vested with a complete life estate in the entire trust fund, erection of which was directed in the 22d item of the will. As a necessary corollary, this life estate, having been given her, was not given to charity, and cannot, in whole or in part, be included in the computation of charitable gifts for the purpose of demonstrating an excess gift of such nature, within the inhibitions of section 17 of the Decedent Estate Law.

If, therefore, the question is determinable at the present time,

the only manner in which the value of the estate to the widow, and consequently that to Yale University, can be computed, is upon the theory, noted in *Fowler* v. *Coates* (201 N. Y. 257, 262), of "the legal presumption" "that the condition will be performed." If this is the proper *ratio decidendi*, which conclusion seems inevitable, the only difficulty is removed and the value is determinable by the use of annuity tables. (*Hollis* v. *Drew Theological Seminary*, 95 N. Y. 166, 179, 180.)

That the matter should now be decided is demonstrated by the very serious practical difficulty presented by a contrary course. The remainder gift to Yale is unquestionably a specific bequest (*Matter of Smallman*, 138 Misc. 889, 913–916, and cases cited), and as such, if further abatement were necessary, due to a violation of section 17, would, on ordinary principles, be entitled to full payment in preference to the general charitable legacies directed in items 17, 18, and 19. (*Matter of Smallman*, 138 Misc. 889, 897, 898, 904, 910, 911; *Matter of Rothman*, 140 id. 597, 598; *Matter of Tuozzolo*, 141 id. 251, 252, and cases cited in these three opinions.) The possession of this remainder gift of the trust is, however, postponed by the terms of the will until after the occurrence of the determining event. If abatement were to occur, it must fall in the first instance on the legatees named in items "seventeenth" to "nineteenth," inclusive, up to the point of their total elimination. These legatees are, however, entitled to a present adjudication of their rights and to payment of the sums to which they are entitled.

Furthermore, on the figures actually present in the case, the tangible difference to the objecting party is of slight and ever-decreasing financial moment. According to the figures in the account, the gross value of the estate at the death amounted to approximately $434,300, subject to debts of $35,560.03, leaving a net estate of $398,750 in round figures. One-half of this would be $199,375. On a rough computation of unpaid administration expenses, etc., the apparent deficiency in the assets to pay all testamentary benefits will not exceed $20,000. This will result in a primary abatement of about twenty-five per cent in the unpreferred legacies, with the further result that the sums payable to the Salvation Army, St. John's Home and the Home for the Blind under their general legacies, will be approximately $15,000, instead of the $20,000 given by the will. Were the condition subsequent, divesting the life estate to the widow, to occur now, the result would be a gift to charities exceeding one-half of the estate by only approximately $7,250, while if the widow were to remain unmarried until July first next, this excess, measured by the event, would be

entirely eliminated. If, therefore, the objecting respondent were to appeal from an adverse determination, the question would have become academic before such appeal would be decided in the usual course, provided the widow did not remarry in the interval.

Whereas, therefore, the court is satisfied that the objector is, under the statute, qualified to interpose the objection, it is constrained to decide on the facts of the case that no violation of section 17 of the Decedent Estate Law exists and overrules the objection accordingly.

No objection having been made thereto, the fees of the attorney for the executors are fixed at the sum of $25,000, which he prays and which is set forth in the account.

Proceed accordingly.