In the Matter of the Estate of HARRY LESSER, Deceased.

Surrogate's Court, Kings County, April 3, 1936.

I. *William Friedman* and *Abraham L. Freeman,* for the executor, Abraham L. Freeman.

*Harry A. Kornfeld* and *Samuel Dimson,* for the respondents, objectants, Rose Lesser, widow, Morris B. Lesser and others, children of decedent.

*William Man Parkhurst,* special guardian for David Lesser and others, grandchildren of decedent, children of Max Lesser, son.

WINGATE, S. It may well be doubted that the testamentary draftsman who prepared the present will, and whose act must be imputed to the testator, had any clear perception at the time he fabricated the document of the variety of problems of interpretation which were being generated.

The first and second items directed the payment of debts and provided for the disposal of testator's remains in a specified manner. The fourth bequeathed $1,000 to a daughter, the fifth attempted to cut off the wife with a $500 gift, the sixth disinherited three sons by reason of their alleged disloyalty and disrespect to the testator during his lifetime, the seventh gave a charitable legacy of $1,000, and the ninth appointed the executor. The wife has already elected to take against the will and the remaining items third and eighth are subjected to spirited attack in the present proceeding, in consequence of alleged invalidity, which, if sustained, would result in the frustration of four out of six of the expressed dispositive directions of the instrument.

The two items which are presently questioned read as follows:

" *Third.* I hereby give and bequeath unto my executor hereinafter named or his successor or successors, the sum of one thousand dollars each, for each one of the children that may survive me, of my son Max Lesser, to be held, nevertheless, in trust for the following purposes:

"To pay said sums to the children, that may survive me, of my son, Max Lesser, on their respective twenty-first birthdays, provided these children are given a normal Jewish, liberal education including an ability to read Hebrew, up to and including at least their fourteenth year: and, further provided that the Jewish dietary laws are observed by their parents up to and including the confirmation of these my present grandchildren: provided, however, that these my present grandchildren visit my grave at least once a year up to and including the twenty-first birthday of my youngest grandchild. If these conditions are not complied with to the complete satisfaction of my executor or his successor or successors, then the funds herein bequeathed are to go to the 'Federation for the Support of Jewish Philanthropic Societies of New York City,' whose office is at 71 West 47th Street, New York, N. Y."

"*Eighth.* All the rest residue and remainder of my estate, whether the same be real, personal or mixed, and wheresoever the same may be situated, I hereby give, devise and bequeath to my grandchildren, who may survive me, the children of Max Lesser, provided in the opinion of my executor, his successor or successors, they and their parents have complied with all the terms and conditions of Section Number 'Third' herein above mentioned: otherwise, then, the funds herein bequeathed are to go to the 'Federation for the Support of Jewish Philanthropic Societies of New York City.'"

It is the contention of the sons whom the testator sought to disinherit, that both of these provisions are wholly void, and that in view of the wife's election against the will, the donative directions of the instrument are wholly inoperative except as to the sums aggregating $2,000 given in the fourth and seventh items, and that the balance of the estate passes as intestate. The special guardian for the legatees under the two quoted items, too, is not wholly happy about the situation and asserts that the conditions attempted to be imposed are void as against public policy and that his infants are entitled to enjoyment of their respective gifts relieved of them.

The argument of the respondents who assert total invalidity is primarily predicated on the hypotheses that the conditions specified in the will are conditions precedent, that the duration of the one concerning grave visitation is potentially measured by the minority of a child which may be born to testator's children subsequent to his death, that in some rather illusively defined manner it is also measured by the lives of the parents of the identified grandchil-

dren, and, finally, that the alternate gift to the charity is a " contingent remainder " which is incapable of effectuation upon the deletion of the primary gift. The assertion of each of these premises displays a somewhat imperfect comprehension of the applicable legal principles.

The last will first be considered. In this connection comment will be confined to the provisions of the eighth item, since, if the third were to be held invalid, it would not, of itself, result in intestacy, for the reason that since the portion of the estate intended to pass thereunder would simply fall into the residue and, if that has been validly given, would devolve according to its directions. (*Riker* v. *Cornwell,* 113 N. Y. 115, 124; *Albany Hospital* v. *Albany Guardian Society,* 214 id. 435, 446.)

Analyzing the provisions of the eighth it is obvious from the language employed that an outright present gift is made. The recipients thereof are named in the alternative. They are primarily the described children of Max Lesser, provided the conditions imposed meet with compliance; " otherwise," namely, upon a failure of the conditions, the property involved is to go to the specified charity. This is in no sense a remainder gift to the charity and no trust is involved, wherefore *Matter of Silsby* (229 N. Y. 396), cited by the respondents, is not applicable. The gift is a primary one which takes effect directly on the eventuation of the specified contingency and is in all respects valid, being merely an alternate primary gift based on a condition.

It is, therefore, obvious that no matter which disposition the court may make in respect to the validity of the gifts to the grandchildren, the adult respondents will be entitled to nothing, and success in their other contentions could result only in diverting all of the property of the estate, other than that given under the fourth and seventh items, from testator's blood relatives.

The remaining contentions of these parties are, however, in the opinion of the court, as fallacious as the one just considered. It is entirely true, as has frequently been remarked, that it is often difficult to determine whether a particular testamentary condition imposed is to be considered as precedent or subsequent. There is, however, a distinct preference in the law for a determination that an estate shall be held to be vested rather than the reverse (*Riker* v. *Gwynne,* 201 N. Y. 143, 149; *Bowditch* v. *Ayrault,* 138 id. 222, 228; *Matter of Rossiter,* 134 Misc. 837, 840; affd., 229 App. Div. 730; affd., 254 N. Y. 583; *Matter of Cary,* 154 Misc. 682, 683), and since under a condition subsequent the estate is deemed vested subject to possible future divestment in the event of non-compliance with the specified condition (*Matter of Smallman,*

141 Misc. 796, 801, 803 and authorities cited; *Matter of Leonard*, 143 id. 172, 176), it is the usual determination that " if the act or condition required does not necessarily precede the vesting of the estate, but may accompany or follow it, and if the act may be as well done after as before the vesting of the estate, * * * then the condition is subsequent." ( *Underhill* v. *Saratoga & Washington R. R. Co.*, 20 Barb. 455, 459; see, also, *Matter of Baechler*, 121 Misc. 691, 700; affd., 215 App. Div. 797.)

In addition to these considerations, the words of present gift in the eighth item are consonant only with an intention for immediate vesting. Since both items are in *pari materia*, the same interpretation is also applicable to the third.

The position that the condition of visitation of the grave is to continue until the majority of some hypothetical child who may be born subsequent to the death of the testator, does not require serious attention. The will speaks from the date of death of the testator. (*Brundage* v. *Brundage*, 60 N. Y. 544, 548; *Matter of Larney*, 148 Misc. 871, 878; *Matter of Schrier*, 147 id. 539, 540; *Matter of Shevlin*, 143 id. 213, 217; *Matter of Beckmann*, 158 id. 706.) It may, therefore, reasonably be interpreted in this connection only as referring to those persons who bear the stated relationship to him at the time the instrument takes effect. Whereas it might be arguable under certain circumstances that this youngest grandchild might conceivably be the child of some of testator's children other than Max Lesser, this question is presently academic since the youngest living grandchild was a child of this son born on May 6, 1934, slightly over eight months after the death of the testator. It was obviously " alive " *in ventre sa mere* at the time of the decedent's demise and is not only entitled to the benefits which he gave to the specified class of grandchildren (*Matter of Gebhardt*, 139 Misc. 775, 776; *Matter of Crespi*, 158 id. 383), but comes within the description of the person whose minority is to measure the period of grave visitation.

The sole remaining question raised by the parties which is necessary for consideration is the contention of the special guardian that the conditions imposed upon the gift by the testator should be declared inoperative and the grandchildren be held entitled to receive the gifts on attaining their respective majorities irrespective of whether or not the stated conditions have then met with compliance.

The only authority cited in support of this position is *Holmes* v. *Connecticut Trust & Safe Deposit Co.* (92 Conn. 507; 103 A. 640), in which the court held that a testamentary condition that the husbands of the beneficiaries should abstain from the use of tobacco

and intoxicating liquor as a beverage was " clearly one opposed to public policy " (p. 514) as tending to be " provocative of marital discord."

As opposed to this, may be cited *Brownson* v. *Gifford* (8 How. Pr. 389, 392), in which a condition voiding a gift was present and validated, that if the donee's husband should attempt to collect any claim from the testator's estate, the gift should fail.

On principle it would appear difficult to distinguish these authorities, and with all due deference to the learned writer of the former, it would appear that the latter was the sounder of the two.

It must be borne in mind in all such instances that " the legacies and devises were acts of bounty merely. The testator was free to withhold them altogether, or to subject them to conditions, whether sensible or futile. The gift is to be taken as it is made or not at all." (*Oliver* v. *Wells*, 254 N. Y. 451; see, also, *Brown* v. *Knapp*, 79 id. 136, 143; *Dinan* v. *Coneys*, 143 id. 544, 547; *Matter of Brush*, 154 Misc. 480, 482; affd., 246 App. Div. ——.)

The only exceptions to this rule are found in those cases in which the condition imposed requires the performance of an act which is *malum in se* or *malum prohibitum*, or the omission of a duty or the encouragement of " such crimes and omissions." (*Mitchel* v. *Reynolds*, 1 P. Wms. 181, 189; *Matter of Forte*, 149 Misc. 327, 329.)

In the evaluation of any situation for the purpose of determining whether the condition amounts to such encouragement, a particular court should not permit its imagination to wander too far afield. The mere remote possibility that, for example, marital discord might result from the refusal of a husband to waive some unquestionable right and thereby promote a disruption of the marital tie, would seem to presuppose an instability of the status even transcending that asserted by those who are most pessimistic respecting current domestic standards.

So long as it be recognized that the testator possesses the absolute right to withhold a gift, so long must it be possible for him legally to waive his privilege in this regard on the terms of his own choosing, unless the performance of unsocial acts can be seen to be the reasonably probable result of such conditional waiver.

Conditions involving the personal habits and traits of character of a potential recipient of a testator's bounty have frequently been sustained. (*Hogan* v. *Curtin*, 88 N. Y. 162, 171; *Onderdonk* v. *Onderdonk*, 5 N. Y. Supp. 242, reported by memorandum only, 52 Hun, 614; affd., 127 N. Y. 196; *Rushmore* v. *Rushmore*, 12 N. Y. Supp. 776, reported by memorandum only, 59 Hun, 615.) The conditions here postulated respecting maintenance of the Jewish faith are analogous. The testator has in effect stipulated

that to participate in his bounty, his grandchildren must live in the Orthodox Jewish manner which he may have deemed essential for their eternal salvation. It is not for this or any other court or person to question the correctness of his views or prejudices. His evident object was to see to it that the recipients of his bounty adhered at least to the outward manifestations of the religious faith in which he believed. Since they are all infants of tender years, it was obvious that the only method by which their desired faith could be assured would be through the co-operation of their parents. All of the conditions in this regard were conducive to this end and were, indeed, the only conceivable means of attaining it. There is nothing any more contrary to our policy in the requirement of a testator that his beneficiary should espouse and be trained in a certain religious faith, than in a stipulation that he shall marry one of a certain belief, which has been sustained. (*Matter of Seaman,* 218 N. Y. 77, 81.)

To imagine a possibility of family disruption by reason of such a stipulation is indeed visionary. It is in the interest of the State that uprightness and morality be fostered and any person who would fully adhere to the tenets of any of the standard religions of the world would closely approximate a model of rectitude. It is a psychological principle that inner grace, if not necessarily a concomitant, is frequently a promoted consequence of outward manifestation. It follows that strict adherence by these children during their formative years to the teachings and observances of one of the greatest of present-day religions which had its beginnings before the dawn of secular history, cannot reasonably be considered other than as beneficial to the individuals themselves, and thus, indirectly, to the State.

The dispositions made by the third and eighth items of the will are consequently sustained in their entirety. The four grandchildren in question are determined to be presently vested with undivided one-fourth interests in the remainder of the estate and in the respective trust interests of $1,000 each, subject to divestment only upon the failure of occurrence of the specified conditions, in which event the alternative gift to the charity will take effect.

Since the income of these funds has not been made the subject of testamentary direction and the infants are at present the persons presumptively entitled to the next eventual estate under section 63 of the Real Property Law (*Matter of Shupack,* 158 Misc. 873), it will be paid to their general guardian until some material change occurs in the situation.

Enter decree on notice.