In the Matter of the Estate of Rose Ferrara, Also Known as
Rosina Ferrara, Deceased.

Surrogate's Court, Kings County, January 26, 1938.

*Max Bayer*, for the petitioner, Dominick Ferrara, as executor, etc., and also for Luigi Ferrara, surviving spouse of decedent.

*Joseph B. Cavallaro*, special guardian for Mary Ferrara Graziana, infant daughter of decedent, legatee, and for Frank, Louis, Carmine and Leonard Monteforti, infant grandchildren of decedent, contingent legatees.

WINGATE, S. The present proceeding raises the question as to the source from which the benefits to an electing spouse shall be paid and the effect which such payment will have upon the rights of the other legatees and devisees to whom testamentary benefits were accorded.

No one questions the propriety or mode of the exercise of the election by the widower. The only benefit given him by the will was a life estate in certain realty which was terminable on his death or remarriage. This is not such a gift as will defeat the right of the surviving spouse under section 18 of the Decedent Estate Law. (*Matter of Byrnes*, 260 N. Y. 465, 474.) The only questions presented, therefore, concern the concrete outright sum which the elector is entitled to receive, the source or sources thereof, and the resulting rights of the other beneficiaries named in the will.

In *Matter of Curley* (160 Misc. 844) this court took occasion to review all pertinent previous pronouncements on these subjects. Nothing has since then been called to its attention which would incline it to alter the views therein expressed. The principles then enunciated will accordingly be applied in the solution of the present problems.

As enumerated in the account, the items of property of the gross estate consist of the following: Cash $5,923.92; articles specifically bequeathed, $319.30; real estate, $9,000, giving a total gross estate of $15,243.22. From this sum will first be deducted the administration and funeral expenses in the amounts which may ultimately be allowed. Assuming for purposes of illustration only, but expressly not deciding, that their total will amount to the sum set forth in Schedule C, namely, $2,705.10, it is found that the net estate amounts to $12,538.12. On this basis, the elective share of the widower would amount to $4,179.37.

Continuing the foregoing assumption, upon the payment of the hypothetical sum of $2,705.10, the assets of the estate which would have devolved pursuant to the terms of the will, had the widower not elected to take in contravention of its terms, would be cash,

$3,218.82, articles specifically bequeathed, $319.30, and real estate, $9,000.

According to the terms of the will, the husband was, as noted, given an estate in the real property terminating on his death or remarriage, whichever should first occur, and the remainder thereof was given to testatrix's children Josephine, Dominick and John or to the issue, if any, of such of them as may have died prior to the happening of the first occurring of the alternate specified events, which is to terminate the life estate of the husband, or if any shall have died without issue, then to the survivors.

Mary is given $3,000 and certain specified jewelry and articles of personal property and John and Dominick are given the balance of testatrix's jewelry. The residue of the estate is bequeathed in equal shares to testatrix's sons Frank, Anthony and Louis and her daughter Sarah.

Although apparently unimportant on the facts of this case, the court cannot concur in the contention of the special guardian that there is any such express indication of desire to prefer Mary as would warrant the exemption of her $3,000 bequest from a contribution in the making up of the elective shares to which the widower is entitled if any part thereof were necessary for the purpose.

The first step in the evaluation of the situation resulting from the election, is to determine the value of the several gifts on the basis of presently existing facts as they would have taken effect had the widower not elected to take in contravention of the terms of the will. Whereas this matter is complicated by the fact that the gift to the husband may be terminated by his remarriage, which is an unpredictable occurrence (*Humes* v. *United States*, 276 U. S. 487, 494; *Matter of Rothfeld*, 163 Misc. 11, 15), there is no inference of fact that such event, which is a divesting condition subsequent (*Ludlow* v. *New York & Harlem R. R. Co.*, 12 Barb. 440, 442; *Underhill* v. *Saratoga & Washington R. R. Co.*, 20 id. 455, 459; *Matter of Lesser*, 158 Misc. 895, 898, 899), will occur (*Matter of Feldhus*, 165 Misc. 122, 124). On the contrary, there is an inference that the presently existing status of the widower will continue (*Matter of Callahan*, 142 Misc. 28, 35, 36; affd., 236 App. Div. 814; affd., 262 N. Y. 524; *Matter of Auditore*, 136 Misc. 664, 672; affd., 233 App. Div. 740; *Matter of Goodchild*, 160 Misc. 738, 743) until the happening of the inescapable eventuality of his death. It follows that under the terms of the will the widower would have become vested with a life estate terminable by marriage (*Fowler* v. *Coates*, 201 N. Y. 257, 262; *Vail* v. *Long Island R. R. Co.*, 106 id. 283, 287; *Calvary Presbyterian Church* v. *Putnam*, 249 id. 111, 115; *Matter of Schriever*, 221 id. 268, 271; *Matter of*

*Byrnes,* 260 id. 465, 471), the value of which, for present purposes, must be calculated on the probable duration of his life as indicated by mortality tables. (*Matter of Smallman,* 141 Misc. 796, 803, 804.)

The age of the widower has not been disclosed. For illustrative purposes, it will be assumed that at the date of death it was forty-five. On this assumption, his expectancy was 24.54 years. On that basis, the present value of the life estate of the widower in the $9,000 real estate would amount to somewhere in the neighborhood of $5,800, and the value of the remainder gift to the children would be an approximation of $3,200.

Predicated on the foregoing assumptions, the set up under the terms of the will would assume the following appearance:

| | |
|---|---:|
| Life estate to widower | $5,800 00 |
| Remainder to named children or their issue | 3,200 00 |
| General legacy to Mary | 3,000 00 |
| Specific bequests to children | 319 30 |
| Residue of estate to named persons | 218 82 |

The elective share of the widower, however, amounts, as noted, only to the sum of $4,179.37. Under the second deduced principle in *Matter of Curley* (160 Misc. 844, 851) the benefits given by the will to the elector are first to be applied in satisfaction of his elective rights. On the suppositions heretofore indulged, the testamentary gift actually made was more than ample for the purpose, with the result that no abatement in the gifts to the other beneficiaries is necessary and the total elective share is impressed as a lien upon and is to be realized from, the realty. (Cf. *Matter of Wishart,* 149 Misc. 343, 345, 346.) Like other liens, this is to be satisfied by the sale of the charged asset, if necessary.

The balance of the proceeds of the realty may not be paid over to the remaindermen at this time, since the identity of the ultimate recipients thereof is in doubt and is determinable only on the termination of the prior life estate by the death or remarriage of the widower. Such excess proceeds, therefore, must be held upon an executorial trust until the happening of the conditioning event with the income in the interval payable to the persons who, from time to time, answer the description of those presumptively entitled to the next eventual estate. (*Matter of Curley,* 160 Misc. 844, 851, deduced principle No. 8.)

The report of the special guardian expresses his dissatisfaction with the amount of the funeral expenses, listed at $2,705.10, and his intention to contest these items of expenditure. The court

904

has not found any such objections in the record and it may be that the special guardian deems the mere noted statement in his report sufficient for the raising of the issue. Such is not the fact and formal objections should be interposed promptly. When the issues thus raised have been determined, the additional pertinent facts to which reference has heretofore been made should be supplied by stipulation or proof and the required exact calculations made in accordance with the indicated formula.

Proceed in conformity herewith.